Louise HAYWOOD, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health & Human Services, Defendant–Appellee.

No. 89–4251

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 16, 1989.

**1464**

Lonnie Ray Smith, Southwest Louisiana Legal Services, Dianne M. Mayo, Lake Charles, La., for plaintiff-appellant.

Marguerite Lokey, John Gough, Chief Counsel, Office of Regional Counsel, HHS, Dallas, Tex., for defendant-appellee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Haywood appeals from the district court's order granting the Secretary's motion for summary judgment affirming the determination that the plaintiff-appellant is not entitled to supplemental security income or disability benefits. Our review of the record demonstrates that the Secretary committed no error in failing to obtain an updated opinion from a medical advisor following the introduction of new evidence post-hearing or in not making more explicit credibility findings. In addition, we hold that the new evidence the plaintiff-appellant seeks to introduce, concerning her mental impairments, does not meet the 42 U.S.C. § 405(g) standards for remand. Therefore, we affirm, and deny the plaintiff-appellant's motion to admit new evidence.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff-appellant Louise Haywood ("Haywood"), born on August 10, 1936, has a sixth grade education. She has worked as a kitchen aide and as a launderer. In her most recent job, from 1983 till 1986, she worked as a "shirt presser" for a dry cleaner. Haywood's work involved placing shirts in washing and drying machines and removing and pressing them. This work routinely involved lifting 20 to 25 pounds, standing for relatively long periods of time, and lifting her arms frequently.

Until May 1, 1986, Haywood worked full-time. For the month of May 1986, allegedly because of an increase in chest pains, Haywood worked only part-time. Thereafter, she quit work, claiming that chest pains rendered her unable to continue.

In June 1986, Haywood applied for disability benefits and supplementary security income ("SSI"). She listed "heart condition" as the basis of her disability. Haywood was denied such benefits on July 31, 1986. After reconsideration, in November 1986, benefits were again denied. Hay-

wood then requested and received a de novo administrative hearing.

Medical records before the administrative law judge ("ALJ") show that since at least 1981, Haywood has frequently gone to hospitals complaining of "chest pains." She has also taken medication for such pains for a number of years. A brief summary of much of the medical record before the ALJ follows.[1]

On October 20, 1982, Haywood was admitted to the Walker Olin Moss Regional Hospital because of chest pains. After admission, her chest pains ceased and, ultimately, after a number of tests, a doctor in the hospital's cardiology clinic concluded that she did not suffer—as previously thought—from atypical angina. He recommended that she discontinue heart medication and be treated for anxiety. All cardiac medication was stopped; she did not complain of chest pains and was released.

Haywood was rehospitalized in both March and May of 1986. During her hospitalization in May 1986 her final diagnosis was listed as "unstable angina." However, she was noted to be in "apparent emotional distress" and in several instances the medical records linked her angina to anxiety.

Haywood also underwent two "stress tests" (on February 21, 1985 and June 19, 1986) in relation to her complaints about chest pain. Although she experienced no chest pain during these, the results were inconclusive because she did not continue the required exercise for long enough to permit valid evaluation.

Dr. Young Hee Kang saw Haywood twice in August and at least once in September 1986. Dr. Kang diagnosed her as having unstable angina and anxiety disorder. He continued her heart medication and prescribed medication for her nerves. He further advised her to receive monthly check-ups.

Haywood was again hospitalized because of chest pains at the Louisiana State University Medical Center in May 1987. In June of 1987, she visited the hospital's car-diology clinic. At that time, doctors in the cardiology unit evaluated Haywood as having atypical chest pain secondary to either "GI [gastrointestinal problems] or anxiety."

During her administrative hearing on June 2, 1987, Haywood described her chest pains as "a squeeze" that "cuts" her breath. She noted that the pains were not necessarily related to activity and that she took medication to stop the pain (although it did not always work). She also testified that she suffered from "bad nerves" and experienced periods of depression. Haywood described her condition of nervousness as remaining constant, but noted that she took medication for her nerves on an on-going basis.

A medical witness, Dr. George Anderson, a specialist in cardiovascular diseases, appeared at the administrative hearing at the ALJ's request. He testified that there was no electrocardiac evidence of angina or ichemia (i.e., the heart muscle not receiving enough blood) in the medical records presented (these did not include the May 1987 hospitalization) and found that there was no solid clinical evidence of Haywood suffering cardiovascular problems. Based on the evidence before him, Dr. Anderson testified that he did not believe that Haywood met or had established the equivalence any of the listed disabilities.

At the end of the hearing Haywood requested a psychological review at government expense. The ALJ denied such request. The ALJ noted Haywood's anxiety, but—in passing—said that he did not believe Haywood had an "emotional problem." Subsequent to the hearing, Haywood herself obtained a psychological evaluation from Charles Downing ("Downing"), a psychologist. Downing administered the Millon Clinical Multiaxial Inventory (the "Millon") and interviewed Haywood. He submitted a letter for post-hearing consideration to the ALJ. Downing stated that the Millon showed "generalized anxiety dis-

---

1. In addition to the medical treatment summarized, the records show Haywood visiting the emergency room of the Walter Olin Moss Regional Hospital on a number of occasions between 1981 and the time of her administrative hearing.

order," "dysthymic disorder," and a "borderline personality" with "prominent dependent and passive-aggressive traits." He further stated that the data indicated "severe mental disorder." In Downing's opinion, Haywood was incapable of working. However, in reaching this conclusion, he took physical health and other factors into account, as well as mental health.[2]

On August 28, 1987—after considering all of the documents on record, hearing testimony, and all of the arguments presented—the ALJ, on behalf of the Secretary for Health and Human Services (the "Secretary"), found that Haywood has "a medically severe combination of impairments whose combined impact causes significant limitation in her capacity for handling more than 30 pounds, she has a slight restriction of activities of daily living, and slight to moderate difficulties in maintaining social functioning." He found she did not have a disabling heart condition and that her chest pains were "sporadic and mild to moderate" in character. The ALJ ruled that her combined impairments, though severe, did not meet or equal the required impairments for disability and he found her residual functional capacity allowed her to perform her past job as a shirt presser—an unskilled, repetitive light job. Thus, he denied her disability benefits and SSI.

Following the ALJ's decision, Haywood exhausted her administrative remedies and, subsequently, filed this suit against the Secretary in the United States District Court for the Western District of Louisiana. Upon order of the presiding magistrate, both parties filed summary judgment motions and supporting memoranda. The magistrate recommended that the Secretary's motion be granted. Haywood filed objections to his report in a timely manner. Subsequently, the district court adopted the magistrate's recommendations and granted the Secretary's motion for summary judgment.

Haywood timely appealed to this court. She argues that (1) because neither the ALJ nor the Appeals Council submitted her post-hearing mental impairment evidence to a medical advisor, it was not properly evaluated and, hence, the ALJ did not have sufficient facts before him upon which to make an informed decision and (2) remand should be granted because the ALJ failed to make credibility findings. In addition, since the filing of the Haywood's original brief on this matter, new evidence in the form of a report and evaluation by the Lake Charles Mental Health Center ("Lake Charles") has come into existence. She moves to submit this report for our consideration.

## II. STANDARD OF REVIEW

In reviewing the Secretary's decision to deny disability insurance benefits and SSI, this court is limited to a determination of whether the Secretary's decision is supported by substantial evidence in the record as a whole, *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir.1988); *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987) (per curiam), and whether any errors of law were made. *Hollis*, 837 F.2d at 1382; *Neal*, 829 F.2d at 530. In applying the "substantial evidence" standard, we scrutinize the record to determine if, in fact, such evidence is present. However, we may not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the Secretary. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir.1988) (per curiam). Substantial evidence means more than a scintilla, but less than a preponderance and is defined as follows:

[S]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the

---

**2.** Downing wrote:

> The fact that she is on her own [sic] various medications would certainly suggest to me that there is a cardiac problem which requires consistent treatment.
>
> I don't see how she could be expected to obtain much less hold employment at this

point. *If in fact her physician has told her not to walk at all than [sic] certainly she could not be expected to function in her previous job positions. At her age, with her lack of formal academic training and with the reported medical history she does appear to be in need of help* (emphasis added).

fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Id.* (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (per curiam) (citations omitted)).

The law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI. *Hollis*, 837 F.2d at 1382–83 n. 3. In both cases, "disability" means an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that is expected to result in death or last for twelve or more months. 42 U.S.C. § 423(d)(1)(A) (Supp.1989). An individual applying for disability insurance benefits and SSI bears the initial burden of proving that she or he is disabled. *Abshire*, 848 F.2d at 640. Once this initial burden is satisfied, the Secretary bears the burden of "establish[ing] that the claimant is capable of performing substantial gainful activity and therefore, not disabled." *Id.*

In determining whether or not a claimant is capable of performing substantial gainful activity, the Secretary utilizes the five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings, age, education and work experience.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.[3]

"If the Secretary adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir.1987).

### III. HAYWOOD'S CLAIMS

Haywood appeals the Secretary's holding that she is not disabled on two grounds. We consider these in sequence.[4]

A. The Fact that a Medical Advisor did not Consider Post–Hearing Psychological Evidence.

■ Haywood argues that because the ALJ heard testimony from a medical advisor ("MA") at her hearing, he and the Appeals Council committed reversible error by not submitting her additional, post-hearing evidence to the MA for review. She asserts that reconsideration by a MA was necessary for the full and fair development of her case. Her claim lacks merit.

An ALJ requests a MA to testify when she or he feels it necessary. A MA is a board-certified specialist:

He is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner. He is a neutral adviser.

*Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842 (1971). The ALJ requested a MA to appear at the hearing in this case. But nothing indicates that a MA's evaluation of the post-hearing evidence was required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations. *See* 20

---

**3.** "A finding that a claimant is disabled or not disabled at any point in the five step process is conclusive and terminates the Secretary's analysis." *Abshire*, 848 F.2d at 640.

**4.** Because we affirm the denial of SSI and disability benefits to Haywood, we do not reach Haywood's request that this case be remanded solely for the calculation of benefits.

C.F.R. § 416.1444. The ALJ presumably called Dr. Anderson because Haywood had a long history of chest pains and the record contained conflicting medical diagnoses. There was no reason to recall him to consider the report of a psychologist. Moreover, simply because the ALJ utilized the services of a MA in relation to questions about Haywood's heart condition, there is no need to call a MA specializing in psychology to review Downing's report. Though the ALJ may ask an appearing MA's opinion, the ALJ—not the MA—rules on whether a claimant is disabled.

Haywood further argues that because the opinion of a physician "designated" by the Secretary is required in deciding whether a claimant's impairments meet or equal listed impairments, an updated medical opinion on the equivalence of her impairments should have been sought following submission of Downing's report. In Haywood's case, State agency staff physicians considered whether her impairments met or equaled listed impairments at both the initial and the reconsideration stages of her application. While it is true that such consideration occurred prior to the existence of Downing's report, we note the options available to an ALJ in evaluating the severity of a claimant's mental impairments: (1) he "may complete the document [5] without the assistance of a medical advisor;" or (2) he may request the assistance of an MA in "preparing the document;" or (3) "[w]here the issue of a mental impairment arises for the first time at the [ALJ] hearing level, the [ALJ] *may* decide to remand the case to the State agency for completion of the document and a new determination." 20 C.F.R. § 404.1520a(d)(1)(i)-(iii) (emphasis added); *see also* SSR 83–19 reprinted in *Social Security Reporting Serv. Rulings* 93 (West Supp.1989) (ALJ need only obtain updated medical equivalency opinion "when additional medical evidence is received which, *in the opinion of the ALJ,* may change the determination ... that the impairment(s) does not equal the listing." (emphasis added)).

In the instant case, the ALJ did not believe Downing's report would alter the previous medical recommendations rendered [6] and, thus, he did not feel it necessary to either call an MA *or* remand to the state agency for a new determination. However, the ALJ considered and incorporated the post-hearing evidence in his determination about Haywood's disability.

Overall, contrary to Haywood's assertion, the fact that neither the ALJ nor the Appeals Council obtained a new medical opinion in light of Downing's report did not deprive her of a full and fair inquiry into her combined impairments. At the hearing, the extant evidence on Haywood's "heart condition" and the varying diagnoses were explored. The ALJ also asked Haywood and the MA a number of questions about her condition and allowed her representative to question her extensively for the record. While at the hearing the ALJ did state that he did not think Haywood had a "psychological" problem, even then he recognized her anxiety (indeed, at the hearing, he mentioned that she might suffer from "cardioneurosis"). More importantly, he accepted and obviously con-

---

**5.** Under the regulations, a document outlining the steps of the procedure for evaluating the severity of mental impairments must be prepared. 20 C.F.R. § 404.1520a(d).

**6.** Although Downing indicated that he did not believe Haywood could hold a job, he took factors other than his own diagnosis of her anxiety and depression into account. Downing noted that the various medications Haywood took suggested that she had a heart problem; he then went on to state that if her doctor "told her not to walk at all ...," he did not see how she could perform her prior job. Downing also considered Haywood's age, lack of educational in training, concluding that she needed help. While Downing offers some evidence of Haywood's psychological status, his opinion as to her ability to perform her past job seems to turn on his understanding of Haywood's heart condition and her rendition of her physician's advice. Much evidence concerning Haywood's heart condition—of a more first hand nature—was already before the ALJ. Moreover, nothing in the record shows that Haywood's physicians felt her unable to walk. While Downing's letter could arguably be construed in such a manner that a different medical determination could possibly have been reached, the ALJ determines the credibility he accords evidence and resolves conflicts therein. *Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. Unit B 1981) (per curiam).

sidered her post-hearing evidence—Downing's psychological report—in his determination.

The ALJ's evaluation of the evidence specifically mentions Downing's diagnosis of Haywood's mental impairments. He also relied on the diagnosis of generalized anxiety disorder in concluding that Haywood's combination of impairments (chest pain of gastrointestinal or anxious origin as well as generalized anxiety disorder) is "medically severe." Moreover, due to her combined impairments, the ALJ found her incapable of performing "work involving handling more than 30 pounds and work which is complex, non routine, requires constant contact with other [sic] and involves constant decision making; because she has a slight restriction of activities of daily living, [and] slight to moderate difficulties in maintaining social functioning." Although the ALJ still concluded that Haywood had the residual capacity to perform her former work as a shirt presser (as this job did not require any of the restricted activities), these findings clearly indicate consideration of the record as a whole—including post-hearing evidence. Thus, we believe that Haywood was given a full and fair consideration of her combined impairments.[7] *See, e.g., Kane v. Heckler,* 731 F.2d 1216 (5th Cir.1984) (ALJ failed to develop the record adequately where unrepresented claimant's hearing lasted five minutes and ALJ did not probe sufficiently into claimant's allegations of pain).

**B. Credibility Findings.**

Haywood asserts that the ALJ did not make a credibility finding about her pain and that this led him to conclude erroneously that she could return to past relevant work. She argues remand is necessary for the establishment of credibility findings. We disagree.

While it is true that in *Scharlow v. Schweiker* we held that the "[f]ailure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand," 655 F.2d 645, 649 (5th Cir. Unit A 1981), we did so in a situation in which the presiding ALJ based his decision solely on the medical evidence presented and excluded all consideration of the claimant's subjective complaints. *Id.* at 648–49. In the case at hand, Haywood's allegations of pain were considered and accepted. As Haywood herself points out, Dr. Armstrong's testimony and the ALJ's comments at the hearing both indicate that they believed Haywood felt chest pain.

The ALJ concluded that Haywood's pain did not emanate from a disabling cardiac condition,[8] but he credited her testimony

---

7. In connection with this claim, Haywood also asserts that the magistrate reviewing the case at the district court level overstepped his role in the review process by independently assessing the post-hearing evidence of Haywood's mental health impairments under sections 12.04 and 12.08 of the form entitled "Psychiatric Review Technique." While it is true that the reviewing court's role is "not reweigh[ing] the evidence or try[ing] the issues de novo[ ]," *Deters v. Secretary of Health, Educ. & Welfare,* 789 F.2d 1181, 1185 (5th Cir.1986), we note that the record shows that the magistrate only looked into those issues because Haywood—in her summary judgment motion below—asserted that the ALJ failed to consider them. While the magistrate's language may have implied that he was engaging in initial, substantive evaluation of medical evidence, from the context, we believe that the magistrate's only purpose in considering the evidence was to determine whether the ALJ had committed error in not making findings under sections 12.04 and 12.08. Thus, we reject Haywood's contention that the instant case should be remanded either because the magistrate acted improperly or the ALJ erroneously failed to make findings.

8. Haywood applied for disability because of an alleged "heart condition." At the hearing, much evidence was heard concerning her chest pain. The record also contains extensive medical records relating to this complaint. Although there were conflicting opinions on whether Haywood's heart condition was cardiac in origin (with several diagnoses of angina), many doctors noted her anxiety, and the electrocardiograms and x-rays on record show no abnormality or evidence of angina or ichemia. Moreover, doctors at the Cardiology Clinic at Louisiana State University Medical Center, who evaluated her at the time closest to the hearing, believed that her chest pains were due to anxiety or a gastrointestinal problem. Thus, substantial evidence supports the Secretary's determination that Haywood does not have a disabling heart condition.

and specifically recognized that she felt some pain. He determined that Haywood's pain was sporadic and mild to moderate in character.[9] However, he did not believe that such pain would prevent her from performing her past job. We will not disturb this finding unless it is not supported by substantial evidence. *See, e.g., James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986) ("ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference.").

It is well settled in this circuit that pain itself may be disabling or prevent the performance of certain jobs. *Ware v. Schweiker,* 651 F.2d 408, 412 (5th Cir. Unit A 1981) ("pain resulting from a 'medically determinable impairment,' even when its existence is unsupported by objective medical evidence, may of itself be so intense as to cause disability[ ]"), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). In the case at hand, Downing's report presented evidence of a medically determinable mental impairment. However, not all pain rises to the level of disabling. To be "a disabling condition under the [Social Security] Act ...," pain must be " 'constant, unremitting and wholly unresponsive to therapeutic treatment.' " *Harrell v. Bowen,* 862 F.2d 471, 480 (5th Cir. 1988) (per curiam) (quoting *Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir.1983)).

By Haywood's own allegations, her chest pain fails to meet this standard. At the hearing, she only described the pain as a "squeezing" and stated that it was accompanied by a numbness in her left arm and exhaustion. At the time Haywood requested an ALJ hearing, she claimed that she suffered severe chest pains "approximately every week." Haywood also said that these episodes last thirty minutes to an hour and that—although it was not always effective—she took medication to relieve the pain. Thus, substantial evidence, including Haywood's own description of her pain, indicates that her pain does not equal the settled requirements for establishing disabling pain.

Not only does substantial evidence exist to show that—despite her pain—Haywood is not disabled, it also supports the ALJ's finding that Haywood could perform her relevant past work. Haywood's job as a shirt presser routinely required her to carry 20 to 25 pounds, walk a bit, stand, and raise her arms. Haywood's sporadic pain itself would not appear to prevent her from performing those functions. Moreover, the record shows that during the entire period in which she worked at the dry cleaners, she suffered from chest pains and was seen by hospitals on account of such pains. Although she alleged that such pains became more frequent in 1986, by her own reckoning, she only experienced "severe" pain approximately once per week.

Furthermore, nothing in the record, indicates that Haywood is otherwise physically unable to perform this job. Based on the evidence before him, the ALJ judged that Haywood could not perform work requiring her to lift more than 30 pounds. Her job as a shirt presser, however, only required her to lift 20 to 25 pounds. While some of the forms she filled out applying for benefits state that doctors told her not to "lift," the record does not support this assertion.

Her job also required a little walking and a lot of standing. The record does not indicate that she cannot do either of these. Though at the hearing she stated, that she does not do housework or shop, some of her written disability and SSI applications indicate otherwise. For instance, at vari-

---

9. In reaching this conclusion, the ALJ did not give an explanation of why he believed Haywood's pain to be "mild to moderate." While an explicit statement on this point would have been helpful, *see, e.g., Carry v. Heckler,* 750 F.2d 479, 485 n. 14 (5th Cir.1985), we do not conclude that this failure rises to the level of reversible error. Contrary to *Scharlow, supra,* in this case the ALJ concluded that Haywood felt pain, but that such pain was non-disabling and would not prevent her from performing her past work. *Scharlow,* 655 F.2d at 648–49 (in remanding for lack of credibility findings the court noted that the ALJ had failed to determine that Scharlow suffered pain, but that such pain was not disabling); *Benson v. Schweiker,* 652 F.2d 406, 409 (5th Cir. Unit B 1981) (where the claimant would have prevailed had all her evidence been believed, "it was clear error for the [ALJ] to disregard completely the subjective evidence developed at the hearing."); *see also* discussion *infra* of the debilitating effects of her pain.

ous points, she stated that she is able to care for her own personal needs, sometimes shops, and that the chest pain may come on when she engages in activities such as sweeping her house. In addition, although she apparently told Downing that her doctors told her not to walk and some of her applications state that doctors told her not to work, none of the evidence before the ALJ confirms this.[10] Haywood's own statement at the hearing only indicated that her doctors told her not to do much walking until they completed their tests and, generally, not to get exhausted.

Given the lack of evidence to the contrary and Haywood's prior work under what appear to be substantially the same health conditions and cognizant of the heavy burden on a claimant in proving disability, we conclude that the ALJ's finding that Haywood is capable of performing her past job as a shirt presser is substantially supported by the record as a whole. *See Kane*, 731 F.2d at 1219 (claimant bears burden of showing disability and inability to perform past work).

Haywood also argues that because of a lack of credibility findings, the ALJ could not reject her opinion that she could not return to her prior job—even part-time. This contention is spurious. Implicit credibility findings were made on the truth and reliability of her complaints of pain. The determination of a claimant's ability to perform a past job, however, is a decision made by the Secretary based on all of the evidence before him. In the case at hand, it is apparent that the ALJ considered Haywood's complaints of pain and claimed restrictions of activity, but did not believe that such complaints would prevent her from performing her prior job as a shirt presser. Substantial evidence supports his finding.

## IV. HAYWOOD'S MOTION TO SUPPLEMENT THE RECORD

■ Haywood seeks to introduce additional medical evidence in the form of an evaluation by social workers at Lake Charles in June and July 1989. She requests that, in light of the evidence on the record and this new evidence, we reverse and award her benefits. In the alternative, Haywood requests that we remand this case for consideration of the new evidence.

We do not issue factual findings on new medical evidence. *See Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981) (per curiam) ("it is not our job as an appellate court to examine new evidentiary materials and find issues of fact[ ]"). Thus, our review in this situation is limited to determining whether to remand for the consideration of the newly presented evidence. *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir.1987). Under 42 U.S.C. § 405(g), which controls the scope of our review, we may remand to the Secretary "upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding...." (emphasis added). *See also Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir.1987) (per curiam).

The Lake Charles report and the accompanying "mental status functional capacity" checklist diagnose Haywood as suffering from an "adjustment disorder with depressed mood." This evidence, not in existence at the time of the administrative and district court proceedings, meets the "new" requirement for remand to the Secretary, but runs into problems on the "materiality" and "good cause" prongs of the conditions for remand.

First, in applying the test for remand, we have held that it is "[i]mplicit in the materiality requirement" that " 'the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.' " *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (quoting *Szubak v. Secretary of Health*

---

**10.** In fact, Dr. Kang, who she claimed told her not to work, made no such assertion in his report in the record. Rather, he diagnosed her as suffering from unstable angina and anxiety disorder. He noted the severity of her chest pain and simply stated that she "need[s] medical attention regularly."

*and Human Serv.,* 745 F.2d 831, 833 (3rd Cir.1984) (per curiam)); *Bradley v. Bowen,* 809 F.2d at 1058. In this case, the report offers insight into Haywood's recent mental health and offers a social worker's assessment of Haywood's current functional status; it does not address Haywood's condition at the time of her disability application (June 1986) or at the time of her hearing (June 1987). In fact, the report quotes Haywood as saying that her condition has deteriorated in the last six months to one year—at least two years after her alleged disability began. Thus, the recently submitted report is—at best—evidence of the deterioration of her non-disabling condition. We are constrained by *Johnson* to hold that this evidence does not meet the materiality requirement for remand.

Second, Haywood's submission of this evidence as grounds for remand also falters on the "good cause" prong. Haywood argues that "good cause" exists for not presenting this evidence previously because the ALJ refused her request for a psychological review at government expense. This argument is not convincing. It is well settled that the claimant bears an initial heavy burden of proving his or her disability. *See Scharlow,* 655 F.2d at 649 (request for psychological or psychiatric evaluation rejected; "burden of proving disability is upon the claimant."). A consultative examination at government expense may be required if the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision." *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir.1977) (per curiam) (emphasis in original); *see also Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir.1987) (per curiam). "The decision to require such an examination is discretionary[ ]," *Jones,* 829 F.2d at 526, but limited where the claimant "raises the requisite suspicion" that such an examination is *necessary* for the ALJ to discharge his duty of full inquiry. *Pearson v. Bowen,* 866 F.2d 809, 812 (5th Cir.1989) (remand for pulmonary function study found necessary on basis of claimant's testimony and doctor's recommendation); *see also Jones, supra.*

Haywood failed to raise the necessary suspicion. Although Haywood requested a psychological examination at the end of her hearing, to that point she had based her disability claim only on a "heart condition" and offered evidence focused on this claim. While evidence of Haywood's anxiety was recognized at the hearing, unlike the situation in *Pearson,* Haywood's testimony did not indicate *necessity* for psychological review, nor did any doctors on record at that time recommend such a review. Moreover, Haywood herself ultimately procured a psychological review and placed a report of the findings in the record. As has been discussed, *supra,* the ALJ explicitly considered these findings. Thus, we deny Haywood's motion to admit the new evidence and refuse remand for the consideration thereof.

V.

For the foregoing reasons, the district court's judgment is AFFIRMED and Haywood's motion requesting remand for the consideration of new evidence is denied.