1 F.3d 1234
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joy RICE, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-1305.
 United States Court of Appeals,
 Fourth Circuit.
Argued: July 14, 1993.
Decided: August 16, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Aiken. C. Weston Houck, District Judge. (CA-88-3268-2K)
 Mary J. Wiesen-Kosinski, Aiken, South Carolina, for Appellant.
 Dean Scott Landis, Office of the General Counsel, Department of Health and Human Services, Baltimore, Maryland, for Appellee.
 Margaret Seymour, United States Attorney, Wistar D. Stuckey, Assistant United States Attorney, Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security, A. George Lowe, Deputy Chief Counsel for Social Security Disability Litigation, Office of the General Counsel, Department of Health and Human Services, Baltimore, Maryland, for Appellee.
 D.S.C.
 AFFIRMED.
 Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Social Security income disability claimant Joy Rice (Rice) appeals the district court's order affirming the Secretary of Health and Human Services' (Secretary) decision terminating her benefits in September 1980. Finding no error in the decision of the district court, we affirm.
 
 
 2
 * On June 30, 1978, Rice applied for disability insurance benefits and Supplemental Security Income payments alleging she was disabled as of May 5, 1978, due to a kidney impairment, a bladder infection, and arthritis. The Secretary denied her claim both initially and upon reconsideration. An Administrative Law Judge (ALJ) reversed this decision, finding that Rice was disabled as of May 5, 1978. Specifically, the ALJ found that: "Medical evidence establishes that the claimant suffers from anxiety, depression, arthritis, chronic urinary tract infections and thyroid difficulty. As a result of these combined conditions the claimant has a good deal of weakness, pain and difficulty in concentration." (R. 179). The ALJ recommended that she be reexamined in the future to determine whether she reacquired the capacity to engage in gainful activity. Id.
 
 
 3
 On May 21, 1981, the Secretary reconsidered Rice's disability and issued a notice informing Rice that her benefits were terminated effective September 1980 because she was no longer disabled. Rice sought an administrative review of that decision and on August 25, 1981, the Secretary reaffirmed its decision to terminate her benefits. Rice did not challenge this decision until she filed a second application for disability insurance benefits on October 3, 1984, once again alleging disability as of May 5, 1978, due to kidney infection, arthritis, depression, and "nerves." This application was denied initially and upon reconsideration.
 
 
 4
 On October 18, 1985, an ALJ remanded Rice's claims to the Secretary in light of changes in the standards the Secretary uses to decide whether certain individuals are disabled. These changes were mandated by the Social Security Disability Reform Act of 1984, 42 U.S.C. Sec. 423(f). Following a reconsideration of her claims, the Secretary once again denied disability benefits. Rice appealed this ruling to an ALJ who affirmed the May 21, 1981 decision by the Secretary terminating plaintiff's disability benefits, concluding that this determination was supported by substantial medical evidence.[1] The ALJ also ruled, however, that Rice was again disabled and entitled to benefits as of January 2, 1985.
 
 
 5
 Following the ALJ's decision, Rice filed this action on December 9, 1988, seeking a review of the Secretary's final determination that her disability, established on May 5, 1978, did not continue beyond September 1980. On March 30, 1988, the magistrate judge, to whom the district court had referred the matter, issued a report and recommendation that the Secretary's determination be affirmed. After considering Rice's objections to the magistrate judge's report and recommendation, the district court adopted the magistrate judge's findings and affirmed the Secretary's final decision. This appeal followed.
 
 II
 
 6
 Under the Social Security Act, 42 U.S.C. Sec. 405(g), the scope of our review of the Secretary's final decision is limited to: (1) whether the decision of the Secretary is supported by substantial evidence and (2) whether the legal conclusions of the Secretary are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390 (1971). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shivey v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Law v. Celebrezee, 368 F.2d 640, 642 (4th Cir. 1966).
 
 III
 
 7
 Rice appeals on the grounds that: (1) her due process rights were violated by the Secretary's decision to terminate her benefits effective September 1980 and (2) the Secretary's decision was not based upon substantial evidence and the Secretary failed to apply the correct legal standard. We will address each issue in turn.
 
 
 8
 * Rice first claims that the Secretary's revocation of her disability benefits beginning September 1980 violated her procedural due process rights. Because a prior ALJ determined that Rice was entitled to disability benefits commencing May 5, 1978, Rice concludes that the procedural due process clause requires the Secretary to afford her notice and a hearing before the Secretary can revoke her benefits and overturn the ALJ's decision.
 
 
 9
 We note initially that this issue was not raised before the district court. Ordinarily, we will not consider issues not raised and properly preserved at the trial level. United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). In any event, even if this assignment of error were not procedurally barred, review procedures were clearly available and the Secretary explicitly notified Rice of its decision to revoke her disability benefits and informed her of her right of review.
 
 
 10
 If you believe this determination is not correct, you may request that your case be reexamined. If you want this reconsideration, you must request it not later than sixty (60) days from the date you receive this notice. You may make your request through any Social Security office. If additional evidence is available, you should submit it with your request. Please read the enclosed leaflet for full explanation of your right to question the determination made on your claim.
 
 
 11
 (Trial Record (R) 184). This notice of revocation provided ample opportunity to challenge the Secretary's decision and we, therefore, find no violation of Rice's procedural due process rights.
 
 B
 
 12
 Rice next claims that substantial evidence does not support the Secretary's decision to revoke Rice's disability benefits as of September 1980. To support this argument, Rice argues that the correct standard for terminating benefits was outlined in this court's decision in Dotson v. Schweiker, 719 F.2d 80, 82 (4th Cir. 1983), which announced that an "initial determination [of disability gives] rise to a presumption at the time of [a] second hearing that [claimant] was still disabled and that the Secretary was required to rebut this presumption." However, on October 9, 1984, Congress modified the disability benefits provisions of the Social Security Act, Pub. L. No. 98-460, 1984 U.S.C.C.A.N. (98 Stat.) 1794, 1797. Specifically, 42 U.S.C. Sec. 423(f) now provides:
 
 
 13
 Any determination under this section shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Secretary. Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual had previously been determined to be disabled.
 
 
 14
 (emphasis added). Thus, Rice's claim must rise or fall on the standard that "terminations must be based on substantial evidence of medical improvement, [there is no] presumption of continuing disability."[2] Rhoten v. Bowen, 854 F.2d 667, 669 (4th Cir. 1988). The Secretary was thus not required to rebut a presumption of continuing disability.
 
 
 15
 The determinative question is, therefore, whether there was substantial evidence of medical improvement in the record to support the Secretary's termination of benefits. The record in this case does contain substantial evidence that Rice's mental and physical impairments improved to the extent that she was no longer disabled and able to perform gainful activity.[3]
 
 
 16
 At the time Rice was awarded a period of disability, she had recently undergone a cholecystectomy in 1976 and experienced significant kidney problems with inflammatory polyps in the bladder which were unresponsive to treatment and which resulted in urinary frequency and infection, chills, pain, and nausea. She had thyroid problems and complained of arthritis and dizziness.
 
 
 17
 In 1980, however, medical evidence indicated improvement in her condition. For example, with respect to Rice's physical condition, Dr. Harry L. Pearce performed an orthopedic examination on July 2, 1980. He found that Rice "had no physical impairment or disability [and] a full range of motion in her hands, wrists, elbows, and shoulders without evidence of deformity or swelling." (R. 254). Moreover, this examination revealed that her feet, ankles, knees, and hips were within normal limits. Dr. Pearce stated: "I find no real evidence of orthopedic pathology in this lady except for mild osteoarthritis consistent with her age. I would therefore have to find that she has no physical impairment or disability on an orthopedic standpoint." (R. 254). Thus, the examination suggested that Rice's arthritic condition had improved to the point that it did not impede her movements. Dr. Augustin Carswell also performed an orthopedic examination of Rice on August 19, 1980. His examination revealed no orthopedic abnormalities and he specifically concluded that Rice did not have osteoarthritis. Dr. Carswell performed a subsequent examination on July 27, 1981. Dr. Carswell noted good range of motion in Rice's shoulders, and X-rays he took showed no evidence of injury. In addition, Dr. James L. Bland, Rice's treating physician, informed a Social Security Administration Examiner on July 11, 1980 that Rice did suffer joint pain and difficulty getting about, however, he did not venture an opinion as to whether Rice was disabled. With respect to her urinary tract infections, which were a basis for her claim of disability beginning May 5, 1978, Dr. Bland later commented to another Examiner that although Rice suffers "periodical urinary tract infections, these infections are cleared up with medication." (R. 295). Rice does suffer from bilateral fibrocystic disease,[4] but this was characterized by Dr. James C. Blalock, on March 11, 1981 as of a mild degree. Subsequent examinations by Dr. Jack Cannon on July 8, 1982 and Dr. Blalock on September 7, 1983 reaffirm the characterization of the condition as mild, and these physicians noted that no significant change occurred. Although Rice complained of shortness of breath, pain and chills, an examination by Dr. T.M. Meyers found that "none of [Rice's subjective complaints] ha[s] any electrocardiographic correlation." (R. 269).
 
 
 18
 With respect to her mental condition, Dr. Benjamin F. Moss examined Rice on July 30, 1981 and concluded "her thought processes do not show any disorder of production and the progress appears to be unimpeded. It is my impression that this lady has a somatoform disorder with anxiety and depressive symptoms. She is in my opinion capable of managing any funds to which she might be entitled." (R.266). Dr. Moss added that Rice suffered from no significant neurosis or psychosis and he concluded that "her thought processes do not show any disorder of production ... there are no suicidal thoughts ... no delusions or hallucinations [and] her special faculties are intact." (R. 266). In addition, Dr. Bland's July 1980 diagnosis stated: "she is clear, coherent, and oriented and is able to relate well and is neat and clean in her dress," and "she was pleasant and cooperative."
 
 
 19
 In addition, we see no clear error in the ALJ's determination that, to the extent Rice did have physical or mental impairments, these did not result in any significant restrictions in her daily activities. The ALJ noted:
 
 
 20
 [Rice's] impairments [did not] result in significant restriction of activities of daily living as the claimant has described activities as including driving five days a week for a distance of about five miles a day, grocery shopping and visiting an elderly woman who lives next to the grocery store, cooking occasionally and going out to eat with her husband approximately 10 times a week, washing clothes, making the bed, reading the newspaper and watching television ... During the period from July 1980 to January 1, 1985 there was no evidence of difficulty maintaining social functioning as is shown by the claimant's statements that she regularly visited an elderly woman next to the grocery store and is represented by reports from numerous physicians that she was clear, coherent and able to relate well and maintain a good personal appearance.
 
 
 21
 (R. 12-13). In short, although there was medical evidence of mental impairment during the period September 1980 through January 1985, and most of the medical evidence of improvement related to orthopedic improvement, there was substantial objective medical evidence that Rice's physical and mental impairments were not disabling. Furthermore, evidence of her daily activities supports this.[5]
 
 
 22
 We place significant weight on the ability of an ALJ to accumulate and apply in its decision the medical and nonmedical evidence of disability. An ALJ may accept some evidence and reject other evidence. See, e.g., Long v. Bowen, 866 F.2d 1066 (8th Cir. 1989). An ALJ may reject subjective complaints inconsistent with a level of activity to which the claimant testifies. Id. We dictate no particular standard by which an ALJ must assign weight to one versus another type of evidence.
 
 
 23
 We are not entitled to reweigh the evidence or substitute our judgment for that of the Secretary. Substantial evidence means more than a scintilla but less than a preponderance. An absence of substantial evidence may be found only where there is a conspicuous absence of credible choices or no medical evidence contrary to the claimant's allegations of disability. See, e.g., Haywood v. Sullivan, 888 F.2d 1463 (5th Cir. 1989). In sum, we find that substantial evidence supported the Secretary's decision and, therefore, we affirm the Secretary's termination of disability benefits in September 1980.[6]
 
 AFFIRMED
 
 
 [1]
 Because of the close interplay between the medical evidence and the finding of substantial evidence for the Secretary's decision, the medical evidence will be discussed along with our legal analysis in section III
 
 
 [2]
 We regard as without merit Rice's assertion that our decision in Lively v. Secretary of Health and Human Services, 820 F.2d 1391, 1392 (4th Cir. 1987) gives an initial finding of disability some sort of res judicata effect. In Lively, we found an initial finding of disability, which a claimant successfully defended, precluded a later decision terminating benefits only because a mere two weeks had passed since the initial determination and it was "utterly inconceivable that [claimant's] condition had so improved in two weeks as to enable him to perform medium work." Id
 
 
 [3]
 Rice's relevant past work history indicates she was a laboratory technician in the textile industry. The parties do not contest the ALJ's finding that "that work is generally performed in the economy ... the claimant's past work is light in exertional requirements and semiskilled." (R. 12)
 
 
 [4]
 Fibrocystic disease is the development of cystic spaces accompanied by an overgrowth of fibrous tissue. Dorland's Medical Dictionary 500 (26th ed. 1981)
 
 
 [5]
 The Secretary does not appeal the ALJ's decision that Rice was disabled as of January 2, 1985. Medical and nonmedical evidence does indicate Rice's mental condition significantly worsened in 1985. (R. 12)
 
 
 [6]
 Because the Secretary's decision was supported by substantial evidence, we find no merit in Rice's argument that the termination of her benefits was arbitrary and thus violative of her substantive due process rights