# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 95-50240
Summary Calendar
_____

**GILBERT BALTIERRA,**

Plaintiff-Appellant,

versus

**SHIRLEY S. CHATER,**
**Commissioner of Social Security,**

Defendant-Appellee.

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
**(CA A 94-443)**
_____

(October 19, 1995)

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

Gilbert Baltierra appeals the denial of his application for Social Security disability and supplemental security income benefits.  We **AFFIRM**.

I.

Baltierra applied for supplemental security income (SSI) and disability insurance benefits in May 1991, alleging disability since October 31, 1985, because of back problems.  After his applications were denied initially and on reconsideration,

---

[1]    Local Rule 47.5.1 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that rule, the court has determined that this opinion should not be published.

Baltierra requested and received a hearing before an administrative law judge (ALJ). The ALJ found that Baltierra had the residual functional capacity to perform the full range of sedentary work and, therefore, was not disabled. The Appeals Council vacated the ALJ's decision, and remanded the case for further assessment.

At a supplemental hearing in September 1993, the ALJ determined that Baltierra was unable to perform his past relevant work as a welder and welding supervisor, but "had a residual functional capacity for semi-skilled or skilled sedentary and light work, further reduced by some restrictions with intermediate memory and some difficulty with reading and spelling". Accordingly, the ALJ ruled that Baltierra was not disabled. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied Baltierra's request for review.

Baltierra sought judicial review in the district court. The parties consented to proceed before a magistrate judge, who affirmed the Secretary's decision.

## II.

In sum, Baltierra contends that the Secretary's decision is not supported by substantial evidence. Our review of the Secretary's decision is limited to determining "whether the Secretary applied the correct legal standard and whether the Secretary's decision is supported by substantial evidence on the record as a whole". ***Orphey v. Secretary of Health & Human Servs.***, 962 F.2d 384, 386 (5th Cir. 1992). "Substantial evidence is more than a scintilla and less than a preponderance. It is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Muse v. Sullivan***, 925 F.2d 785, 789 (5th Cir. 1991).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(A) (1991).  "The law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." ***Haywood v. Sullivan***, 888 F.2d 1463, 1467 (5th Cir. 1989).

The Secretary uses a well known five-step sequential analysis in assessing whether an applicant is capable of performing substantial gainful activity:

> 1.   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2.   An individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3.   An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
>
> 4.   If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5.   If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  As is equally well known, "[a] disability determination at any point in the five-step process is conclusive and terminates any further analysis."  *Id*.

"On the first four steps of the analysis, the claimant has the initial burden of proving that [he] is disabled....  The burden shifts to the Secretary on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled."  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (citation omitted).  If the Secretary meets this burden, the claimant must then "prove that he is unable to perform the alternate work".  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## A.

At the fifth step of the analysis, the ALJ concluded, as noted, that Baltierra "had a residual functional capacity for semi-skilled or skilled sedentary and light work, further reduced by some restrictions with intermediate memory and some difficulty with reading and spelling", and that there were a significant number of jobs in the regional and national economy that Baltierra could perform.

## 1.

Substantial evidence supports these findings.  Baltierra was born on April 20, 1951, is a high school graduate, and has worked as a welder and welding supervisor.  On September 27, 1985, he injured his lower back while lifting a heavy weight on the job.  In

- 4 -

October 1985, about a month after that injury, Baltierra was examined by Dr. Sullivan, an orthopedic surgeon, who diagnosed lumbar strain, recommended physical therapy, and prescribed Motrin. Dr. Sullivan stated that he anticipated "a gradual resolution of [Baltierra's] symptoms and a return to work in the not too distant future".

Dr. Sullivan's November 11, 1985, progress note states that although Baltierra had not made any "real improvement with the therapy", he had returned to work in a light duty capacity. Dr. Sullivan prescribed a back brace and allowed Baltierra to continue working as long as he did not bend, stoop, crawl, or lift more than 20 pounds. Baltierra returned to Dr. Sullivan on November 26, and on January 7 and 17, 1986. Dr. Sullivan performed a CT scan, which showed some compression of the nerve root, a narrowed spinal canal, and osteophytes, but he was uncertain whether Baltierra's lack of progress was caused by those abnormalities or by "his fear of returning to work and sustaining some sort of permanent damage". Dr. Sullivan referred Baltierra to Dr. Dorsen.

Dr. Dorsen saw Baltierra on January 24, 1986, and found that he was severely obese, but the neurological findings were normal. Dr. Dorsen cleared Baltierra for full work duty on February 21, 1986.

In April 1986, Dr. Turpin, a neurosurgeon, saw Baltierra at the request of his insurance company. Dr. Turpin reviewed Baltierra's x-rays and CT scan, and opined that Baltierra had degenerative disc disease with hypertrophic spondylosis, but

concluded that Baltierra "certainly" was able to do work lighter than his previous heavy work as a welder. Dr. Turpin recommended that Baltierra "initiate a program of progressive physical conditioning exercise" and "lose at least 60 pounds".

Between April 1986 and April 1987, Baltierra did not receive any medical care. In April 1987, he returned to Dr. Sullivan, reporting that he still had back and left hip pain. Dr. Sullivan encouraged Baltierra to take Tylenol for pain. At the end of July, Dr. Sullivan stated that Baltierra could return to light duty work which did not require lifting over 30 pounds or excessive climbing, stooping, or bending. Throughout 1987, Baltierra continued to see Dr. Sullivan with the same complaints. A CT scan conducted on October 14, 1987, showed a bulging disc at L5-S1 and "a posterior and left osteophyte at L4-5 causing a secondary stenosis of the left lateral recess". On December 11, 1987, Dr. Sullivan reported that Baltierra had sustained a small herniated disc secondary to his injury, and might need back surgery in the future.

On September 14, 1990, Baltierra underwent a psychological consultative examination. The psychologist who performed the tests noted that Baltierra exhibited good social skills; that his personality "should not pose any barriers to training programs or work adjustments"; that he was of average intelligence and could write well, but had some intermediate memory, reading, and spelling problems; and that he suffered from "a mild agitated depression".

On January 29, 1991, Baltierra returned to Dr. Sullivan, complaining of back pain. The physical examination showed that

Baltierra remained "markedly overweight". Dr. Sullivan referred Baltierra to the Texas Rehabilitation Commission and completed a job limitation form, stating that Baltierra had a medical release for employment; that he could sit or stand for no more than four hours in an eight-hour day, lift 10 pounds frequently, climb a flight of stairs or walk 100 yards without pause, and bend, stoop, kneel, squat, crouch, climb, and balance occasionally, but never crawl. Dr. Sullivan concluded that Baltierra was in good medical condition, but diagnosed "mechanical-type back pain secondary to degenerative disc disease".

Although, as Baltierra points out, Dr. Sullivan, in a report to the Texas Department of Human Services dated September 10, 1991, stated that Baltierra's prognosis was "poor", he also found that Baltierra could perform work that did not require lifting more than 25 pounds, or excessive bending, stooping, or crawling, and that allowed frequent changes of position. Thus, no physician pronounced Baltierra unable to work; and the ALJ properly relied on the medical opinions of Baltierra's treating and non-treating physicians to support her decision.

2.

Furthermore, although Baltierra contends otherwise, the ALJ gave sufficient weight to his subjective complaints of pain. "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). "Subjective evidence need not take precedence over objective

evidence."  ***Villa v. Sullivan***, 895 F.2d at 1024.  The ALJ could find no "reasonable nexus between the disabling pain Mr. Baltierra complains of and any other clinical signs reported by his physicians".  The ALJ's determination that the medical evidence is more persuasive than Baltierra's own testimony "is precisely the kind[] of determination[] that the ALJ is best positioned to make".  *See* ***Falco v. Shalala***, 27 F.3d 160, 164 (5th Cir. 1994).  Thus, the ALJ's finding that Baltierra's complaints were not debilitating is supported by substantial evidence.

## B.

Baltierra asserts also that the ALJ failed to use proper legal standards in denying benefits.  First, he complains that the hypothetical questions to the vocational expert did not encompass all of his limitations.  There is no reversible error if an ALJ's hypothetical question incorporates those disabilities recognized by the ALJ, and the claimant's representative is afforded an opportunity to correct any alleged deficiencies in the question. ***Bowling v. Shalala***, 36 F.3d 431, 435 (5th Cir. 1994); ***Morris v. Bowen***, 864 F.2d 333, 336 (5th Cir. 1988).  The ALJ found that Baltierra's "residual functional capacity for semi-skilled or skilled sedentary and light work [was] further reduced by some restrictions with intermediate memory and some difficulty with reading spelling".  The ALJ included those limitations in her hypothetical question to the vocational expert, and Baltierra's counsel was allowed to mention additional disabilities, although those disabilities were not recognized in the ALJ's findings.

C.

Baltierra contends next that there was not substantial evidence that there were jobs available in the national economy that he was capable of performing. At the 1993 hearing, the vocational expert testified that an individual with Baltierra's background and limitations could not perform his past work, but could work as an office helper, a cashier in a cafeteria or parking lot booth, or a photocopying machine operator, and that such jobs existed regionally in the thousands and nationally in the tens of thousands. She explained that she determined the availability of those jobs by referring to the Dictionary of Occupational Titles in conjunction with information provided by the Texas Employment Commission (TEC).

Baltierra complains that the vocational expert "had no formula" for making this determination; but, none is required. "The value of a vocational expert is that [s]he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). The vocational expert relied on her expertise to arrive at her conclusions, and she explained how she arrived at those conclusions. Because this testimony provided the ALJ with evidence substantial enough to support a determination that employment was available to Baltierra, the vocational expert's failure to provide Baltierra with copies of TEC reports upon which she relied does not provide a basis for reversal or remand.

D.

Finally, Baltierra suggests that "[a]dditional evidence should be taken" with respect to his current medical condition. Under 42 U.S.C. § 405(g), this court may remand to the Secretary "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding". 42 U.S.C. § 405(g). Baltierra has failed to make the requisite showing.

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**