Wilbert P. ABSHIRE,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of the United States Department of Health and Human Services, Defendant–Appellee.

No. 87–4709
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 5, 1988.

John D. Thompson, Jr., Lafayette, La., for plaintiff-appellant.

Marguerite Lokey, DHHS/OGC, Dallas, Tex., for defendant-appellee.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Plaintiff Wilbert Abshire appeals an order by the district court granting the Secretary of Health and Human Services' motion for summary judgment and affirming the Secretary's denial of Abshire's claim for disability benefits and supplemental security income (SSI). Finding that the Secretary's determination is not supported by substantial evidence, we reverse and remand for proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing determining Abshire's eligibility for disability benefits, Abshire was forty-nine years old, stood five foot six inches, weighed 210 pounds, and possessed a ninth grade education. Abshire previously worked as a salesman and deliveryman for a bread company until ankle surgery in 1974 prevented him from walking long distances. Abshire then worked for the Lafayette Parish Police Jury operating heavy equipment until he injured his back and neck in March 1982 when he slipped on a catwalk and grabbed onto a rail. Also during this time, Abshire ran a small lawn mower repair business which netted little income.

Shortly after his injury, while working for the police jury, Abshire consulted Dr. J. Hugh Larriviere, who diagnosed Abshire as having degenerative disease of the lower cervical spine, large vertebral spurs with intervertebral encroachment at the spur sites, and spurring of the left shoulder joint and elbow. To alleviate the pain which Abshire was experiencing in his left arm and hand when he extended his neck, Dr. Larriviere recommended a conservative treatment of pain medication and physical therapy. From June 1982 until March 1983, Abshire was treated by Dr. James C. McDaniel who, like Dr. Larriviere, diagnosed Abshire as suffering from degenerative disc disease. While Abshire's condition improved somewhat under Dr. McDaniel, Abshire did not continue under Dr. McDaniel's care when McDaniel suggested a myelogram. Abshire refused the myelogram fearing it might interfere with his lawn mower repair business.

Thereafter, in August 1983, Abshire contacted Dr. Robert Rivet, a neurosurgeon in Lafayette, Louisiana. After a lumbar and cervical myelogram was performed on Abshire revealing evidence of multi-level disc disease, Dr. Rivet performed surgery on Abshire's neck. On April 22, 1984, Dr. Rivet reported that Abshire continued to experience pain and a plug in Abshire's back had collapsed since his initial treatment earlier in 1983. Thus, Dr. Rivet recommended a repeat myelogram which was performed the following day. While Dr. Rivet did recommend further surgical intervention, Abshire elected not to undergo another surgery. At the administrative hearing, however, Abshire testified he would now have the surgery providing he could afford the procedure.

Thereafter, on November 7, 1984, Abshire filed an application for disability and SSI benefits, alleging that he became disabled in March 1982 after his injury while working for the police jury. Abshire was subsequently examined consultatively in connection with his disability claim by Dr. Fred Webre, an orthopedic surgeon. Dr. Webre observed that while Abshire guarded full mobility of his neck, Abshire did have full mobility of his back for a patient his size and full mobility of his right ankle. Dr. Webre also noted that Abshire complained of pain when bending his back or sitting. In this regard, x-rays revealed the presence of degenerative spurs on the vertebras of Abshire. Recognizing that Abshire suffered residual problems from his neck surgery, Dr. Webre recommended that Abshire avoid activities involving strenuous neck movements.

Abshire's application for benefits was initially denied and thereafter, Abshire requested a hearing on his application before an administrative law judge (ALJ). At the administrative hearing, Abshire testified that he has a steady pain that runs from the top of his head and down his back and that he experiences some numbness in his left arm. Abshire further stated that he can sit about one hour at a time, stand

twenty minutes at a time, and walk a maximum distance of one block at a time. Abshire also testified that he has trouble bending and stooping, that he is unable to place his arms on his head, and that he can lift a maximum of only five pounds. During his testimony at the administrative hearing, Abshire stood up and braced himself in an awkward position to relieve his pain, a fact the ALJ specifically recognized in his decision denying Abshire disability and SSI benefits. When asked about his job duties during his previous job as a route salesman for the bread company, Abshire testified that his position included loading his truck for forty-five minutes to an hour every morning, lifting loads weighing approximately ten to fifteen pounds, and climbing in and out of his truck to make deliveries which included carrying the ten to fifteen pound loads from his truck to the store. Further, his delivery route involved drives in excess of one hour.

After considering the evidence, the ALJ concluded that Abshire was precluded, due to his injuries, from engaging in work involving heavy lifting and carrying, excessive reaching with the left arm, and repetitive climbing and balancing. However, the ALJ further found that Abshire was capable of performing light work and concluded that Abshire's past position as a bread company salesman-deliveryman qualified as such light work.

Following the denial of his benefits by the ALJ, the Social Security Appeals Council denied review, rendering the ALJ's decision the final decision of the Secretary. Abshire then sought review of the Secretary's decision in federal district court. The matter was referred to a magistrate who, on March 20, 1987, issued a report recommending that the Secretary's decision be affirmed. The district court subsequently adopted the magistrate's recommendation and entered judgment accordingly. Abshire now appeals.

## II. DISCUSSION

In reviewing the Secretary's decision to deny disability and SSI benefits, this Court is "limited to a determination that the Sec-

retary's decision was supported by substantial evidence existing on the record as a whole and that no errors of law were made." *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987). In this regard, the Court must refrain from reweighing the evidence, trying the issues de novo, or substituting its judgment for that of the Secretary. *Id.;* *Fields v. Bowen*, 805 F.2d 1168, 1169 (5th Cir.1986). Substantial evidence means more than a scintilla, less than a preponderance, and is:

[S]uch relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (citations omitted).

An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. *Neal*, 829 F.2d at 530; *Fields*, 805 F.2d at 1169. Once the claimant satisfies his initial burden, the Secretary then bears the burden to establish that the claimant is capable of performing substantial gainful activity and therefore, not disabled. *Neal*, 829 F.2d at 530. In determining whether or not a claimant is capable of performing substantial gainful activity, the Secretary utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520 (1987):

(1) Is the claimant currently working? (2) Can the impairment be classified as "non-severe"? (3) Does the impairment meet the duration requirement of 42 U.S. C. § 423(d)(1)(A) and is it listed, or medically equivalent to, an impairment in Appendix 1? (4) Can the claimant perform her past relevant work?, and (5) Can the claimant perform any other gainful job?

*Fields*, 805 F.2d at 1170. A finding that a claimant is disabled or not disabled at any point in the five step process is conclusive and terminates the Secretary's analysis.

*Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir.1984).

Initially, Abshire contends that the Secretary's decision that his impairment, while severe, did not constitute one of the listed impairments in Appendix 1 of the regulations is not supported by substantial evidence. The specific impairment listed in Appendix 1 which Abshire asserts he is suffering from is a herniated nucleus pulposus with the following persisting symptoms: pain, muscle spasm, significant limitation of motion in the spine, significant motor loss with muscle weakness and sensory and reflex loss. 20 C.F.R. Part 404, Subp. P, App. 1, § 1.05(C). After reviewing the record, we cannot say that the ALJ's conclusion that Abshire did not suffer from one of the listed impairments in the regulations is not supported by substantial evidence. While medical evidence demonstrated convincingly that Abshire did suffer from a herniated nucleus pulposus that evidence did not establish that Abshire exhibited the accompanying physical symptoms for the required twelve month durational period so as to render his impairment disabling. Among other things, there is no evidence that Abshire suffered muscle spasms of the neck. Finding the Secretary's decision to be supported by substantial evidence, we reject Abshire's contention.

Abshire next asserts that the ALJ's conclusion that Abshire could return to his past work as a salesman-deliveryman for a local bread company is not supported by substantial evidence. Specifically, Abshire argues that his job as route salesman for the bread company entailed extensive driving, lifting, carrying, and climbing in and out of the truck. Further, as a route salesman, Abshire testified that he would be required to extend his neck to look around driving his truck, would have to frequently look up into his truck to unload supplies, and would have to look up or down on shelves to stock those supplies. Abshire maintains that all of these duties would aggravate his neck condition and result in considerable pain.

Initially, we note that the ALJ inadequately set forth his reasons for concluding that Abshire would be able to return to his job as a route salesman for the bread company despite his impairment. "In evaluating a claimant's ability to perform 'past relevant' work, the ALJ is obliged by the regulations to review the claimant's 'residual functional capacity and the physical and mental demands of the work [the claimant has] done in the past.'" *Brown v. Bowen*, 794 F.2d 703, 707 (D.C.Cir.1986); 20 C.F.R. § 404.1520(e). *See also Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir.1987). Since the record is devoid of any analysis of Abshire's past job duties as a route salesman by the ALJ, we could remand for a more thorough explanation of the ALJ's decision in this regard; however, our examination of the record reveals that the ALJ's conclusion that Abshire could return to his past work could not be supported by substantial evidence in any event as the evidence overwhelmingly demonstrates that Abshire's physical impairment precludes him from returning to his former position as a route salesman.

It is undisputed that Abshire suffers from a serious neck injury. Even the Secretary's own consultative physician, Dr. Webre, stated that Abshire should avoid strenuous neck exertion. Further, in initially denying disability benefits to Abshire, the Department of Health and Human Services found that medical evidence revealed that Abshire had a limited range of motion of his neck, and that Abshire could not perform any jobs that would require frequent looking upward. The Department of Health and Human Services further concluded that "[Abshire] cannot return to his past work as a route salesman as it does require him to look upward quite frequently because of the unloading and loading of the truck, and stocking of the shelves." Moreover, Dr. Rivet, Abshire's treating physician, stated in a letter to a life insurance company only one week prior to the date Abshire applied for disability benefits that Abshire was totally disabled. "The opinions, diagnosis, and medical evidence of a treating physician whose familiarities with the patient's injuries, treatment, and responses over a length of time, should be accorded considerable weight." *Barajas*, 738 F.2d at 644.

Finally, the ALJ's conclusion that Abshire could return to his past position is inconsistent with Abshire's testimony regarding the steady pain and physical limitations which he experiences as a result of his impairment. Pain alone can be disabling if the pain is linked to a medically determinable impairment. *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir.1985). Further, an ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain. *Id.*

In sum, we conclude that the ALJ's decision that Abshire was capable of performing his past relevant work as a route salesman for a bread company is not supported by substantial evidence. Accordingly, we remand the instant case to the ALJ for a determination of whether or not Abshire has the residual functional capacity to perform other types of work.[1]

REVERSED and REMANDED.

---

**1.** In light of our decision to remand, we do not address Abshire's contention that the ALJ did not give the report of his treating physician proper evidentiary weight.