**James R. DUNBAR, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. Civ.A. SA–01–CA–1133.**

United States District Court, W.D. Texas, San Antonio Division.

Aug. 6, 2002.

Gordan D. Momcilovic, LawOffice of Ed Goldner, San Antonio, TX, for Plaintiff.

Raymond A. Nowak, U.S. Atty's Office, San Antonio, TX, for Defendant.

## ORDER ACCEPTING MAGISTRATE'S RECOMMENDATION

PRADO, District Judge.

On this date the Court considered the Magistrate Judge's Memorandum and Recommendation in the above-numbered and styled cause, and the plaintiff's objections to the report. After careful consideration, the Court will accept the Magistrate Judge's recommendation and affirm the Commissioner's denial of disability benefits.

■ Where no party has objected to the Magistrate Judge's Memorandum and Recommendation, the Court need not conduct a de novo review of it. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made"). In such cases, the Court need only review the Memorandum and Recommendation and determine whether it is either clearly erroneous or contrary to law. *United States v. Wilson,* 864 F.2d 1219, 1221 (5th Cir.1989). On the other hand, any Memorandum or Recommendation that is objected to requires de novo review by the Court. Such a review means that the Court will examine the entire record and will make an independent assessment of the law.

■ The only question before this Court is whether the Commissioner of the Social Security Administration's determination that the plaintiff is not disabled is supported by substantial evidence. *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995). Under this standard, the Court may not determine that the plaintiff's position is supported by evidence and, on that basis, reverse the Commissioner's determination. In other words, the Court may not substitute its judgment for that of the Commissioner. As the Magistrate Judge points out, conflicts in the evidence are to be resolved by the Commissioner. *Id.* at 174.

■ The Court has reviewed the record in this case and agrees with the Magistrate Judge that the Commissioner's determination that the plaintiff is not disabled is supported by substantial evidence. Although the plaintiff contends the Magistrate Judge incorrectly applied the court of appeals decision in *Watson v. Barnhart,* 288 F.3d 212 (5th Cir.2002), the Court agrees with the Magistrate Judge that the *Watson* decision does not mandate a reversal every time the Commissioner fails to make an explicit finding that a claimant is able to maintain employment. The Magistrate Judge examined the regulatory definition of "residual functional capacity" in 20 C.F.R. § 404.1545(b) and explained that a finding that the claimant can perform work on a regular and continuing basis is inherent in a residual functional capacity assessment. Although it isn't clear whether the *Watson* court considered the language of 20 C.F.R. § 404.1545(b) or the effect of an implicit finding, the Court observes that the only other time the court of appeals has required an explicit finding is in the context of a finding that an impairment is not severe. *See Stone v. Heckler,* 752 F.2d 1099, 1106 (5th Cir.1985) (cautioning Commissioner that if correct standard for making severity determination is not explicitly stated, case will be remanded). Notably, the *Watson* court did not indicate the ALJ's failure to explicitly find that the claimant is able to maintain employment requires a remand in every case.

The plaintiff also complains that the ALJ failed to consider the residuals from

his cardiac condition. Although the ALJ did not make a specific finding about the plaintiff's cardiac condition, the ALJ recognized the plaintiff's cardiac condition in the residual functional capacity assessment concluding that no evidence in the plaintiff's file indicated that the plaintiff is disabled by a cardiac impairment. The Court observes that the medical expert, William Hicks, testified that the plaintiff's heart catheterization showed no cardiac disease and that the plaintiff's big functional limitation is his left wrist. Thus, even if the ALR failed to consider the plaintiff's cardiac condition, reversal would not be warranted because no evidence indicates the plaintiff is disabled by his cardiac condition. As a result, the Court will accept the Magistrate Judge's recommendation that the Court affirm the Commissioner's decision denying the plaintiff's application for disability benefits.

Accordingly, the Court ACCEPTS the Magistrate Judge's recommendation and AFFIRMS the Commissioner's denial of disability benefits.

## JUDGMENT

In accordance with the order entered by this Court on this same date, it is hereby ORDERED, ADJUDGED, and DECREED that the Memorandum and Recommendation filed by the United States Magistrate Judge in the above numbered and styled cause on July 10, 2002 be and is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1) such that the Commissioner's denial of disability benefits is AFFIRMED.

## MEMORANDUM AND RECOMMENDATION

PRIMOMO, United States Magistrate Judge.

Plaintiff instituted this action pursuant to Title 42 U.S.C. Section 405(g) seeking review of the determination of Jo Anne B. Barnhart, the Commissioner of the Social Security Administration, that plaintiff is not disabled and, therefore, not entitled to receive disability benefits. Plaintiff filed his application for benefits on April 16, 1999, asserting that he has been unable to work since February 23, 1999 due to a left hand impairment. (Tr. pp. 51, 53–55 and 64). The Social Security Administration denied the application both initially and upon reconsideration. On November 22, 2000, after a hearing, an administrative law judge ("ALJ") determined that plaintiff is not disabled. (Tr. pp. 9–18). The Appeals Council denied plaintiff's request for review, making the determination of the ALJ the final decision of the Commissioner. Plaintiff now appeals that determination.

### Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* It must do more than create a suspicion of the existence of the fact to be established but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir.1988).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. In applying the substantial evidence standard, the Court must carefully examine the entire record but must refrain from reweighing the evidence or substituting its judgment for that of the

Commissioner. *Id.* Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.*

### Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits. Title 42 U.S.C. Section 423(a)(1). The term "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Title 42 U.S.C. Section 423(d)(1)(A). A person shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Title 42 U.S.C. Section 423(d)(2)(A).

### Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe five basic steps or considerations in evaluating disability claims. Title 20 C.F.R. Section 404.1520. To be found disabled, the claimant first bears the burden of proving that:

(1) he is not currently engaged in substantial gainful activity;

(2) he has an impairment or combination of impairments that is severe; *and,*

(3) the impairment meets or equals a listed impairment; *or,*

(4) in light of the claimant's residual functional capacity, the impairment prevents the claimant from returning to his past relevant work. *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir.1999). If the claimant establishes these elements, the burden shifts to the Commissioner to prove that:

(5) considering the claimant's residual capacities and his age, education, and work experience, the impairment does not prevent him from performing other jobs which exist in significant numbers in the national economy. *Id.* If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

### ALJ's Findings and Plaintiff's Contentions

At the time of the ALJ's decision, plaintiff was 53 years old with a high school education and past relevant work experience as rural route mail carrier. The ALJ found that plaintiff has not engaged in substantial gainful activity since his onset date of February 23, 1999. At the second and third steps of the evaluation process, the ALJ determined that plaintiff has severe tendonitis of the left wrist, insulin-dependent diabetes mellitus, and alcohol addiction in remission, but that these impairments do not, either singly or in combination, meet or equal a listed impairment.

At the fourth step of the evaluation process, the ALJ considered plaintiff's residual functional capacity and the demands of his past work. She reviewed plaintiff's testimony and the objective medical evidence, including the testimony of a medical expert. The ALJ discounted plaintiff's subjective complaints of disabling symp-

toms and limitations. She determined that plaintiff retains the residual functional capacity to perform a limited range of light work. Utilizing the testimony of a vocational expert, she found that plaintiff is unable to perform his past relevant work but that he can perform other jobs which exist in significant numbers in the national economy; therefore, he is not disabled.

Plaintiff contends that the decision of the Commissioner is not supported by substantial evidence. He contends that the ALJ erred in her credibility assessment and failed to provide an adequate explanation for rejecting plaintiff's testimony. He contends that this error contributed to an erroneous assessment of plaintiff's residual functional capacity. In this regard, he also complains that the ALJ erred in failing to permit the rescheduling of a consultative examination, which was initially cancelled due to complications with plaintiff's medications. Plaintiff next argues that the ALJ posed an improper hypothetical question to the vocational expert. He states that the ALJ failed to inquire whether, and to make an explicit finding that, he was able to maintain the employment to which the vocational expert testified.

### Medical Evidence

Plaintiff complained of problems with his left hand and wrist beginning February 23, 1999. In a note dated March 17, 1999, physician's assistant Bryan L. McCoy stated that plaintiff's symptoms are consistent with chronic DeQuervain's tenosynovitis and carpal tunnel syndrome. (Tr. p. 185). He recommended that plaintiff be removed from his job of sorting and pitching mail. A state agency medical consultant, Dr. Jimmy L. Breazeale, concluded in May 1999 that plaintiff is capable of performing medium work with mild restrictions in pushing and pulling. (Tr. pp. 207–216). Dr. Breazeale felt that plaintiff could walk/stand 6 hours in an 8–hour workday and could sit for 6 hours in an 8–hour workday.

Duty status reports of September and December 1999 reflect tendonitis of the left wrist and hand and a tear of wrist cartilage but that plaintiff is capable of performing light work, and can sit, stand or walk as needed. (Tr. pp. 118 and 107).

While plaintiff was hospitalized for gastrointestinal bleeding in July 1999, he suffered a myocardial infarction. (Tr. p. 124). This was caused by the large amount of blood loss. (Tr. p. 317). Plaintiff was released to return to work in August 1999. (Tr. p. 120). A heart catheterization in March 2000 revealed non-obstructive coronary artery disease. (Tr. pp. 218–22).

A consultative examination was performed October 26, 1999 by Dr. Bruce R. Alter based upon allegations of a heart attack and left hand problems. (Tr. pp. 96–98). He noted that plaintiff had developed adult diabetes. Dr. Alter found that plaintiff had a full range of motion of the upper and lower extremities. His distal extremities appeared quite cyanotic and purple in color. Plaintiff had a very poorly palpable pedal pulse as well as radial pulses in his wrist. Strength was 5/5 on the right and 4/5 on the left. A note dated October 21, 1999 indicates that his diabetes mellitus was being poorly controlled. (Tr. p. 114). It appears that insulin was increased. Plaintiff reported that he had not been drinking for 6–8 weeks.

### Analysis

#### 1. Credibility

Plaintiff complains that the ALJ erred in her credibility assessment and failed to provide an adequate explanation for rejecting plaintiff's testimony. He states that this error contributed to an erroneous assessment of plaintiff's residual functional capacity. While the ALJ must consider a claimant's subjective evidence concerning his symptoms, it is within her discretion to determine the debilitating

nature of those symptoms. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir.1991). In judging the claimant's credibility, the ALJ can consider such things as medical reports, the claimant's daily activities and the medications the claimant is taking. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991). An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994); *Abshire*, 848 F.2d at 642.

The Court finds that this burden was satisfied in this case. In her decision, the ALJ found that plaintiff's complaints of disabling pain and limitations are not generally consistent with the evidence of record. (Tr. p. 13). She then cited to medical evidence showing no motor or sensory loss in his left wrist of any significance. She also noted that strength testing on the left wrist was 4/5 and 5/5 on the right wrist. Plaintiff is right hand dominant. Next, the ALJ noted that plaintiff's treating physician found that plaintiff is capable of performing light work provided he avoids frequent flexion and extension of the left wrist. (Tr. p. 14). The ALJ noted that plaintiff was released to work after his heart attack and has had no further cardiac problems. She also discussed the absence of evidence of end organ damage from his diabetes mellitus.

The Court finds that the ALJ's discussion is not cursory or inadequate. She expressed her belief that plaintiff's subjective complaints were not consistent with the objective medical evidence. She then discussed the evidence which shows that plaintiff is not as limited as he professes. The medical evidence indicates some limitations due to plaintiff's left hand and wrist

problem and no restrictions related to plaintiff's heart, diabetes or alcoholism. Substantial evidence supports the ALJ's determination that plaintiff's complaint of being totally disabled is not credible.

### 2. *Residual Functional Capacity*

The ALJ found that plaintiff retains the ability to perform a limited range of light work, with no repetitive flexion or extension of the left wrist. (Tr. p. 17). Plaintiff's claim that this determination is flawed due to an erroneous credibility assessment is rejected for the reasons stated above. Plaintiff also complains that the ALJ's residual functional capacity assessment is based on the testimony of Dr. William M. Hicks, the medical expert, who, plaintiff asserts, was not adequately prepared for the administrative hearing.

The record reflects that, after Dr. Hicks discussed the medical evidence, it became apparent that all medical records had not been provided to him. A recess was taken to permit him to examine those records. (Tr. pp. 315–16). Dr. Hicks then testified that plaintiff's main problem is his left wrist. (Tr. p. 318). He stated that plaintiff is capable of performing light to medium work with a limitation on left wrist extension but no restriction on standing or walking. (Id. at 318–19). Thus, Dr. Hicks' opinion was based upon adequate review of the records. Contrary to plaintiff's suggestion in his brief, there was no need for the ALJ to contact plaintiff's treating physician for additional information or clarification.

Plaintiff also complains that the ALJ refused to permit the rescheduling of a consultative examination which had been cancelled in December 1999 due to a problem with plaintiff's medications. The Court does not believe that the failure to reschedule the examination was error. First, the record reflects that plaintiff un-

derwent a consultative examination in October 1999, two months before, for his heart and left hand and wrist conditions. (Tr. pp. 96–98). Second, to prove that the ALJ failed in her duty to develop the facts relative to a claim for benefits fully and fairly, plaintiff must show that he was prejudiced as a result of the inadequacy of the administrative proceeding; in other words, he must prove that, had the ALJ done her duty, she could and would have adduced evidence that might have altered the result. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir.2000). Plaintiff offers no suggestion that a rescheduled consultative examination would have resulted in medical findings contrary to those already in the record. Therefore, no error was committed in the refusal to order another consultative examination.

In making her residual functional capacity assessment, the ALJ referred to the finding of Dr. Breazeale that plaintiff is capable of performing medium work. (Tr. p. 14). However, she found that plaintiff's condition was more limiting. Various references in the medical records, including evidence from plaintiff's treating physician and Dr. Hicks, indicate that plaintiff is capable of performing light work with left hand and wrist restrictions. The findings of Dr. Alter are not inconsistent with the ability to perform light work under these circumstances. Plaintiff complained of dizziness but Dr. Hicks found no support for that allegation. (Tr. pp. 318 and 326). Although plaintiff complains that Dr. Hicks and the ALJ failed to consider the pain in his feet, the medical evidence shows no problem with plaintiff's ability to stand and walk as needed. In any event, the jobs identified by the vocational expert include a sit/stand option. (Tr. p. 331).

Substantial evidence supports the ALJ's residual functional capacity assessment.

### 3. Vocational Testimony

Finally, plaintiff contends that the ALJ posed an improper hypothetical question to the vocational expert. To the extent he is referring to an error in the residual functional capacity assessment, his argument is rejected for the reasons previously stated. However, he raises one point which remains to be discussed. Citing to *Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002), plaintiff contends that the ALJ erred in failing to ask the vocational expert whether, and in failing to make an explicit finding that, he is not only capable of obtaining employment in the light work category but also in maintaining such employment.

The court of appeals in *Watson* found that substantial evidence supported the finding that the claimant retained the residual functional capacity to perform a full range of medium work. Application of the medical/vocational guidelines dictated a finding that the claimant was not disabled. However, relying upon the opinion in *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), the court reversed for consideration of whether the claimant can not only obtain, but also maintain employment. 288 F.3d at 217. Because the ALJ in the case at bar made no such finding, plaintiff also seeks reversal and remand.

The court of appeals in *Watson* stated that an individual's ability to maintain employment should be relevant to a determination of disability. 288 F.3d at 217. The Commissioner does not disagree with this statement.[1] The question which this Court must consider is whether *Watson* expresses a new rule applicable to every

1. *Singletary* involved a mental impairment. Although the Commissioner argued in *Watson* that the rule in *Singletary* should be limited to mental impairments, the *Watson* court disagreed and applied it to a physical impairment.

social security appeal or whether it is applicable only if the facts suggest that a claimant may be unable to maintain employment. If it was the intent of the *Watson* court to require that an explicit finding be made by the ALJ in every administrative decision that the claimant is able to maintain, as well as obtain, employment, then almost every social security appeal would need to be remanded.

In *Watson*, the court of appeals cited to Watson's *potential* inability to maintain employment because his degenerative disc disease could cause him to lose movement in his legs every number of weeks or because his back pain was too intense every number of weeks to permit work. 288 F.3d at 217. However, it is not clear from the record that those exacerbations actually existed. Thus, arguably, *Watson* is stating a new rule with far-reaching consequences. For the reasons discussed hereafter, this Court does not believe reversal in this case is either necessary or warranted.

Based upon social security regulations and the circumstances in *Singletary*, this Court concludes that the court of appeals in *Watson* did not intend to require an explicit finding in every case that the claimant is able to maintain employment. As noted by the Commissioner in her brief in the case at bar, social security regulations define residual functional capacity as the physical ability to perform work activity "on a regular and continuing basis." Title 20 C.F.R. Section 404.1545(b). As plaintiff also noted, SSR 96–8p provides that residual functional capacity is an assessment of the individual's ability to do "sustained work-related physical and mental activities in a work setting on a regular and continuing basis which means 8 hours

per day, for 5 days a week, or an equivalent work schedule." Thus, inherent in every residual functional capacity assessment is a finding that the claimant can perform that work on a regular and continuing basis and, thus, can maintain employment.[2]

In *Singletary*, the court of appeals held that a finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time. 798 F.2d at 822. As described in the opinion, Singletary's history presented the picture of an individual living a tragic, chaotic personal life who was unable to remain employed for more than limited periods of time. He had been hospitalized repeatedly over a long period of time for psychiatric problems, and the record was replete with discussions of his inappropriate behavior and poor social adjustment. Based on such a record, the court was not satisfied that substantial evidence supported a determination that Singletary could obtain *and maintain* employment, or that this was the finding of the ALJ. 798 F.2d at 823. Thus, the facts in the *Singletary* case dictated a need for a finding that the claimant would be able to maintain employment.

This Court believes that the facts of each case must determine if an explicit finding of ability to maintain employment is necessary. As noted above, a residual functional capacity assessment inherently means that the claimant can perform that work on a regular and continuous basis.

---

2. That being said, the Court must note that, despite finding that the Commissioner's residual functional capacity assessment was supported by substantial evidence, the *Watson* court reversed and remanded for consideration of Watson's ability to maintain employment. The *Watson* court did not, however, discuss the regulatory definitions.

There may be situations when particular circumstances demonstrate that a claimant's ability to maintain employment is compromised by his impairments. If so, an explicit finding that the claimant can maintain employment would be appropriate. Such was the case in *Singletary*, but that is not the situation here. No medical evidence indicates that plaintiff suffers intermittent exacerbations of his symptoms or limitations which would interfere with his ability to maintain substantial gainful activity. The vocational expert specifically testified that the jobs he identified in response to the hypothetical question required plaintiff to be there when he was scheduled to work. (Tr. p. 331). Thus, substantial evidence establishes that he can maintain the employment to which the vocational expert testified.

### Recommendation

It is, therefore, the recommendation of the Magistrate Judge that the decision of the Commissioner denying plaintiff's application for disability benefits be AFFIRMED.

### Instructions for Service and Notice of Right to Appeal/Object

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either by (1) certified mail, return receipt requested, or (2) facsimile if authorization to do so is on file with the Clerk. Pursuant to Title 28 U.S.C. Section 636(b)(1) and Rule 72(b), Fed.R.Civ.P., any party who desires to object to this report must serve and file written objections to the Memorandum and Recommendation within 10 days after being served with a copy unless this time period is modified by the district court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.

*Such party shall file the objections with the Clerk of Court and serve the objections on all other parties and the Magistrate Judge.* A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation contained in this Memorandum and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected—to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir.1996).