Bertha **RANGEL**, Plaintiff,

v.

Michael J. **ASTRUE**, Commissioner of the Social Security Administration, Defendant.

No. EP–07–CV–354–PRM.

United States District Court, W.D. Texas, El Paso Division.

March 6, 2009.

_____

Cheryl L. Langston, Law Office, Forney, TX, for Plaintiff.

John F. Paniszczyn, U.S. Attorney's Office, San Antonio, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD P. MESA, United States Magistrate Judge.

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties consented to trial on the merits before a United States Magistrate Judge. The case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules.

Plaintiff BERTHA RANGEL appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for benefits on the ground that she is not disabled within the meaning of the Social Security Act. (Doc. 7).[1] After considering the briefs, the record evidence, the transcript of the administrative hearing and the ALJ's written decision, the Court finds the final decision of the Commissioner should be REVERSED and REMANDED for further administrative proceedings.

## BACKGROUND

Plaintiff was born on June 29, 1947, making her 59 years old at the time of the administrative hearing. (R. 204).[2] She speaks and understands English. (R. 76). She is married and has a ninth grade education. (R. 204, 206). She has about 17 years of prior work experience as a school cafeteria worker. (R. 77). It appears this work was performed on a part time basis of four hours per day, five days per week. (R. 90). She continued to work on a part time basis for four hours per day, five days per week, after her alleged onset date of June 30, 2003. (R. 87–96).

At the hearing, Plaintiff testified she can no longer work due to horrible pain in her neck and lower back, osteoporosis, diabetes, dry mouth, dizziness, loss of balance, sleep problems, arthritis, headaches, high blood pressure, asthma, weakness, stress, upset stomach, blurry vision and diarrhea. (R. 206–211). The ALJ found Plaintiff did not have a severe impairment or combination of impairments during the relevant time period, beginning on her alleged onset date of June 30, 2003, through December 31, 2003, the date on which she last

---

1. Reference to documents filed in this case is designated by "Doc." followed by the docket entry number.

2. Reference to the transcript of the record of administrative proceedings filed in this case, (Doc. 17), is designated by "R." followed by the page numbers.

met the insured status requirements of the Social Security Act, and, thus, was not disabled. (R. 14–20).

## PROCEDURAL HISTORY

On November 9, 2004, Plaintiff protectively filed an application for disability insurance benefits ("DIB") in which she alleged disability since June 30, 2003, due to osteoporosis, diabetes, stress, anxiety, depression, panic attacks, fatigue and weakness, concentration and memory problems, sleep problems, breathing problems, stomach problems, and pain in her back, legs, arms and shoulders. (R. 39, 103, 160). On January 5, 2005, her application was denied. (R. 44–47). She requested reconsideration and was denied again on April 14, 2006. (R. 35–39). On March 1, 2007, Plaintiff appeared with her attorney for an administrative hearing. (R. 201–212). The Administrative Law Judge ("ALJ") denied the application by written decision issued on April 13, 2007. (R. 11–20). On June 22, 2007, the Social Security Appeals Council denied Plaintiff's request for review, thereby affirming the ALJ's decision as the final decision of the Commissioner. (R. 6–9).

On October 16, 2007, Plaintiff filed a motion to proceed in forma pauperis with the filing of a complaint seeking judicial review of the administrative decision. (Doc. 2). On October 17, 2007, Plaintiff's motion to proceed in forma pauperis was granted, and her complaint was filed. (Docs. 6 & 7). On January 7, 2008, Defendant filed an answer and the transcript of the administrative proceedings. (Docs. 15 & 17). On January 8, 2008, the District Judge entered an order transferring the case to the undersigned for all proceedings. (Doc. 18). On May 2, 2008, Plaintiff filed her brief in support of reversing and remanding the Commissioner's decision. (Doc. 29). On June 2, 2008, the Court

entered an order granting leave for the Commissioner to file a response brief that exceeded the ten-page limit established by Local Court Rule CV–7(c). (Doc. 31). This matter is now ripe for decision.

## CLAIMS PRESENTED

Plaintiff argues the ALJ: (1) failed to properly consider the evidence of record regarding Plaintiff's impairments; (2) failed to order a consultative examination and/or expert medical testimony to determine when Plaintiff's disability began; and, (3) applied an incorrect legal standard in determining that she did not have a severe impairment during the relevant time period. Plaintiff seeks reversal of the Commissioner's decision that she is not entitled to benefits, or, alternatively, a remand for further administrative proceedings.

## DISCUSSION

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole, and whether the proper legal standards were applied in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir.2001), citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983).

In applying the substantial evidence standard, a court must carefully examine the entire record, but may not re-

weigh the evidence or try the issues de novo. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989). It may not substitute its own judgment "even if the evidence preponderates against the Secretary's decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir.1993). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen,* 848 F.2d 638, 640 (5th Cir.1988). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360.

## B. Evaluation Process and Burden of Proof

An individual applying for benefits bears the initial burden of proving that she is disabled for purposes of the Social Security Act. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir.1990). A disability is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the individual from engaging in substantial gainful activity. 42 U.S.C.A. § 423(d)(1)(A)(West Supp. 2008); 20 C.F.R. § 404.1505(a) (2008). Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1510 & 404.1572 (2008).

Disability claims are to be evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520(a) (2008). A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). In the first step, it is determined whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2008). If so, the claimant is found not disabled regardless of her medical condition or her age, education and work experience. *Id.*

In the second step, it is determined whether the claimant's impairment is severe. 20 C.F.R. § 404.1520(a)(4)(ii) (2008). If the impairment is not severe, the claimant is deemed not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) (2008). If the impairment is severe and meets the duration requirement, the third step of the evaluation directs that the impairment be compared to a list of specific impairments in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii) (2008). If the claimant's impairment meets or equals a listed impairment, she is deemed disabled without considering her age, education or work experience. *Id.*

If the impairment is not on the list of specific impairments in Appendix 1, the fourth step requires a review of the claimant's residual functional capacity ("RFC") and the demands of her past work. 20 C.F.R. § 404.1520(a)(4)(iv) (2008). If she can still do this kind of work, she is not disabled. *Id.* If she cannot perform her past work, the fifth and final step evaluates the claimant's ability, given her residual capacities and her age, education and work experience, to do other work. 20 C.F.R. § 404.1520(a)(4)(v) (2008). If she cannot do other work, she will be found to be disabled. *Id.*

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d

119 (1987). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir.1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir.1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Anderson v. Sullivan*, 887 F.2d at 632.

### C. The ALJ's Decision

In his written decision, the ALJ found as a threshold matter that Plaintiff last met the insured status requirements for entitlement to DIB on December 31, 2003. (R. 16). Next, the ALJ determined that although Plaintiff continued to work as a school cafeteria worker, her earnings did not meet the criteria for substantial gainful activity. (R. 14). Therefore, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 23, 2003, through her last insured date of December 31, 2003. (R. 16). At the next step, the ALJ determined Plaintiff did not have a severe impairment or combination of impairments during the relevant time period. (R. 17). Thus, the ALJ determined at step two that Plaintiff was not under a disability at any time from her alleged onset date of June 23, 2003, through her last insured date of December 31, 2003. (R. 20).

### D. Substantial Evidence to Support the ALJ'S Decision

Before addressing the merits of Plaintiff's arguments, the Court will set out the relevant evidence, including the testimony at the administrative hearing, Plaintiff's medical records and reports.

#### 1. Testimony at the Administrative Hearing

On March 1, 2007, an administrative hearing was held. (R. 201–212). Plaintiff appeared, represented by her attorney, and testified in English to the following. She was 59 years old on the day of the hearing. (R. 204). She is married and has five children. (R. 204). She has a ninth grade education. (R. 206). Plaintiff testified she can't work due to horrible pain in her neck and lower back, osteoporosis, diabetes, dry mouth, dizziness, loss of balance, sleep problems, arthritis, headaches, high blood pressure, asthma, weakness, stress, upset stomach, blurry vision and diarrhea. (R. 206–211).

Plaintiff testified she can walk a distance of about one or two blocks. (R. 209). She can remain standing for approximately 15 to 20 minutes. (R. 209–210.) She can lift objects weighing no more than 5 to 10 pounds. (R. 210). She can remain sitting for about 25 to 30 minutes. (R. 210). Her memory is poor, and she forgets things like her adult children's ages. (R. 210). At one time she took an antidepressant, but it gave her diarrhea and an upset stomach. (R. 210–211).

#### 2. Medical Records

The earliest medical record in this case is dated June 30, 2000, and appears to be an order for physical therapy for ankle rehabilitation, three times per week for six weeks. (R. 122). It appears Plaintiff was scheduled to attend eight appointments at Southwest Physical Therapy from mid-October through mid-November of 2000. (R. 121). There is no indication whether Plaintiff attended these appointments. On July 23, 2001, Dr. Robert E. Urrea report-

ed Plaintiff could not lift 40 pounds, and could not return to normal duties. (R. 123). There are no records to indicate either why this restriction was imposed or how long it was intended to remain in effect.

Treatment notes dated January 2, 2004, show Plaintiff was seen for a chief complaint of a sore throat. (R. 187). The diagnosis was laryngitis. (R. 199). On May 6, 2004, Plaintiff was seen for a cough and chest congestion. (R. 131–134). She completed a health history checklist form that indicated the following symptoms: chills, fever, headache, loss of sleep, frequent urination and lack of bladder control, bloating, bowel changes, constipation, gas and blurred vision. (R. 133). She indicated she had diabetes and high cholesterol. (R. 133). Her treatment plan included glucometer strips, Advair, Allegra and Flonase. (R. 132). Blood work dated May 7, 2004, showed Plaintiff's blood glucose was elevated at 126 (normal range: 70–105), and her total cholesterol was slightly elevated at 208 (normal range 140–200). (R. 145–146).

Plaintiff was seen again on May 10, 2004, for a follow up visit. (R. 130). Medications prescribed that day included the antibiotic Levaquin, as well as Allegra and Flonase for allergies, and Advair for asthma. (R. 130, 151). On May 26, 2004, she was seen for a well woman exam. (R. 127–129). The diagnoses were diabetes mellitus type 2, asthma, allergies and hyperlipidemia. (R. 129). Her bilateral screening mammogram dated May 27, 2004, was normal. (R. 138–140). A report dated June 3, 2004, shows Plaintiff's PAP smear was negative for malignancy. (R. 141). A bone density test was ordered and Os–Cal with Vitamin D, an over-the-counter calcium supplement, was prescribed. (R. 150). Crestor was also prescribed. (R. 150).

In August, 2004, Plaintiff was seen for low back pain resulting from an injury to her back sustained when she sat down on the edge of a sofa. (R. 125–126). A "doughnut" was prescribed. (R. 149). X-rays taken of her sacrum and coccyx were normal. (R. 137). There was no evidence of fracture, dislocation, arthritic or inflammatory change or neoplastic change. (R. 137). On November 29, 2004, Dr. Edward C. Juarez completed an agency form indicating he was not treating Plaintiff for a mental condition. (R. 176).

On December 16, 2004, S.W. Casner, M.D., a non-examining agency consultant, reviewed the medical evidence of record regarding Plaintiff's impairments of osteoporosis, depression and diabetes. (R. 158). Dr. Casner determined there was insufficient medical evidence dated prior to the last insured date of December 31, 2003, to determine the case. (R. 158).

On January 13, 2005, a one-month refill of Plaintiff's Glucophage prescription was authorized, and she was advised that she needed to be seen by the doctor. (R. 186). On January 31, 2005, Plaintiff underwent a bone density test that revealed osteoporosis. (R. 182–183). An MRI of her spine dated March 14, 2005, showed a large Schmorl's node[3] in L2 and some mild spinal canal stenosis and neural foraminal stenosis.[4] (R. 181). Dr. Urrea assessed Plaintiff with an old L2 vertebral body fracture, spinal canal stenosis and neural foraminal stenosis. (R. 180A). She was scheduled for an epidural injection by Dr.

**3.** Schmorl's node is an irregular or hemispherical bone defect in the upper or lower margin of the body of the vertebra. DORLAND'S ILLUS. MEDICAL DICTIONARY 1224 (29th ed. 2000).

**4.** Stenosis is the abnormal narrowing of a duct or canal. DORLAND'S ILLUS. MEDICAL DICTIONARY 1698 (29th ed. 2000).

Urrea on March 22, 2005, to relieve her back pain. (R. 180–180A). However, she canceled the procedure because she felt better. (R. 179).

On April 12, 2005, Margaret Meyer, M.D., a non-examining agency medical consultant, completed a Psychiatric Review Technique Form. (R. 164–177). Dr. Meyer found Plaintiff had no medically determinable mental impairment. (R. 164). Dr. Meyer noted Plaintiff had no history of any mental health treatment and was not taking any medications for a psychiatric condition. (R. 176).

Plaintiff was seen by Dr. Urrea on November 9, 2005, for a complaint of a fractured fifth toe on her right foot sustained when she tripped over a pallet while wearing sandals. The treatment plan was to "buddy tape her toes and wait for the healing to continue." (R. 179).

Plaintiff was seen for a check up on August 21, 2006, and tests were ordered, including blood work, urinalysis, screening mammogram and bone mineral density test. (R. 185). Her blood work showed a slightly elevated total cholesterol level of 202, and an elevated blood glucose level of 218. (R. 190–191). Her mammogram was negative for cancer. (R. 192–193). Bone mineral density scans of Plaintiff's left hip and spine were performed on August 26, 2006. (R. 194–198). The raw data from the scans does not include an analysis or interpretation of the results.

### 3. Work History Report

In an undated report, Plaintiff states she held her previous job as a cafeteria worker from 1987 to 2004. (R. 77). She worked four hours per day, five days per week. *Id.* In this job, Plaintiff was required to walk for four hours per day; stand for four hours per day; sit for 30 minutes per day; climb for 30 minutes per day; stoop for four hours per day, crouch for one hour per day; handle, grab or grasp large objects for four hours per day; reach for four hours per day; and, handle small objects for four hours per day. (R. 78). She was not required to kneel or crawl. *Id.* The heaviest weight she lifted was 40 pounds. *Id.* She frequently lifted 30 to 40 pounds. *Id.* She was not a lead worker, and she did not supervise anyone. *Id.*

### 4. Daily Activities Questionnaires

In a questionnaire dated November 29, 2004, Plaintiff stated her ability to walk is affected once or twice weekly by leg swelling. (R. 97). Plates in her ankle cause it to hurt when walking, and diabetes worsens this condition. *Id.* To relieve her condition, she takes Tylenol, uses a therapeutic cream and sees the doctor. *Id.* She does not exercise. *Id.* In an average day, she goes to work, then does her housework. *Id.* She indicated the following activities were limited by her physical problems: standing (legs swell); walking (legs swell and sometimes ankle hurts); lifting/carrying (back and waist pain); bending (hurts lower back and waist); kneeling/squatting (lower back and knee pain); reading the newspaper (can't read without glasses and eyes sometimes hurt); housework (causes leg and back pain). (R. 98). Her diabetes affects her eyesight. *Id.* She feels stressed and run down. *Id.* She has no energy and is short of breath. Her ankle and lower back hurt. *Id.* Her osteoporosis causes her bones to hurt, especially her ankles, legs and waist. *Id.*

In a questionnaire also dated November 29, 2004, Plaintiff reported she has mental problems (stress and pressure) that limit what she is able to do. (R. 99). She reported she had not received any treatment for mental or emotional problems. *Id.* She reported she spends most of her time each day working and doing housework. (R. 100). She does not have any

difficulty caring for her personal needs. *Id.* She does not require assistance to prepare meals, go shopping or handle her money. *Id.* She does not require any help to perform her household chores of mopping, cooking, cleaning and washing. *Id.* She has a driver's license and is able to drive. *Id.* She forgets "little everyday things." *Id.* Stress causes her difficulty getting along with family, friends and others. (R. 101). She cares for her husband and son. *Id.* Her weekly attendance at church with her husband has not been affected by mental or emotional problems. *Id.* She can't stand on her feet long due to pain in her leg and lower back. *Id.* Work upsets her most. *Id.* Her osteoporosis does not allow her to do all the things she wants to do. (R. 102).

### 5. Pain Report

In an undated report, Plaintiff indicates she has pain in her right ankle and lower back. (R. 79–86). She describes the pain as aching, cramping, stabbing, throbbing and tangling [sic]. (R. 80). She experiences this pain 3 to 4 days per week, sometimes lasting all day, other times lasting just a few minutes. *Id.* Standing makes it worse. *Id.* She takes Tylenol for pain relief. (R. 81). Plaintiff also listed Cotaflage [sic], 500 mg., daily, as a pain reliever prescribed on January 1, 2000, that sometimes relieves her pain.[5] (R. 82). She also reports wrist pain that is aching and stabbing. (R. 82). She experiences this pain twice a month, and it lasts all day. *Id.* The pain is made worse by having to change from cold to hot water or by lifting something heavy. *Id.* She uses Bengay and an elastic bandage to relieve this pain. (R. 83).

### 6. Disability Reports

In a Disability Report–Appeal dated February 24, 2005, Plaintiff reported her illness was "out of control," and she now had problems dressing, but she did not know the approximate date that these changes had occurred. (R. 103). She reported she was now having "pain and problems with lower back, legs, neck, breathing, vision, headaches, sleep, fatigue and weakness, anxiety, concentration and memory problems." (R. 103). She indicated she did not know the approximate date when these changes had occurred. *Id.*

Plaintiff listed Dr. Marie Becerra as the physician who began treating her in 2004, for "pain and various problems" with "medication and tests." (R. 104). She also reported being treated by Dr. Robert Urrea from 2002 to 2003 for "pain and various problems" with "medication and tests." (R. 104). She indicated she was not being treated for emotional or mental problems. (R. 104). She reported taking Glucophage, 500 mg., for diabetes and Os–Cal for her bones. (R. 106). There were no reported side effects from these medications. *Id.* Plaintiff stated she needs help to care for her personal needs. As for changes in her daily activities, Plaintiff reported she feels terrible. (R. 124).

In a Disability Report–Appeal dated May 9, 2005, Plaintiff reported that beginning February 18, 2005, she started having "more pains" and crying a lot. (R. 111). She reported "pain and problems with lower back, legs, neck, breathing, vision, headaches, sleep, fatigue and weakness, anxiety, concentration and memory problems." (R. 111). She indicated she was not being treated for emotional or mental problems. (R. 112). She reported being under the

---

**5.** This appears to be a misspelling from which the correct name of the medication could not be determined.

care of doctors at the Santa Teresa Medical Care Center from January, 2005, through April, 2005, for "pain and various problems" with "medication and tests." *Id.* She also reported being treated by Dr. Robert Urrea, beginning about 4 years ago, for "pain and various problems" with "medication and tests." (R. 112). She indicated she was last seen by Dr. Urrea in March of 2005. *Id.* Plaintiff listed her medications as including Os–Cal for her bones, Flamex[6] [sic] for osteoporosis, Glucophage for diabetes, and Crestil[7] [sic] for cholesterol. (R. 114).

### 7. Recent Medical Treatment, Medications and Work Background

In an undated report, Plaintiff reported her treating physicians, Dr. Dorothy Gault, Dr. Marie Becerra, Dr. Alfred Varela, Dr. Roberto Urrea, Dr. David Holland and Dr. E. Juarez, have advised her that her condition was getting worse, and that she had to "suffer with these pains and problems for life," and that her condition is "very serious, permanent and disabling." (R. 118). She reported that she had been hospitalized at Del Sol Medical Center, Sierra Medical Center and Southwest Physical Therapy, but she provided no reasons why she was hospitalized nor any description of the nature of treatment received. *Id.*

Plaintiff listed nine medications she was presently taking (and the date first prescribed): Fosamax, 10 mg., (07/25/05), once weekly for osteoporosis; Naproxen, 250 mg., (2/13/07), twice daily for pain; Clonazepam, .5 mg., (2/8/07), once daily for sleep; Cyclobenzaprine, 10 mg., (2/13/07), twice daily for spasms; Lisinopril, 5 mg., (2/13/07), once daily for hypertension; Metformin ER, 500 mg., (2/4/07), twice daily for diabetes; Glimiperide[8] [sic], 4

mg., (1/13/07), once daily for diabetes; Boniva, 150 mg., (2/13/07), once monthly for osteoporosis; and an over-the-counter medication, Osteoprime 120, (2/8/07), four times daily, for osteoporosis. (R. 119).

### E. Analysis of Plaintiff's Claims

#### 1. ALJ Applied Incorrect Legal Standard to Determine Non–Severity

In this case, the ALJ's inquiry ended at step two. That is, the ALJ found that Plaintiff had no severe impairment during the relevant time period, from the alleged onset date of June 30, 2003, through her date last insured of December 31, 2003. Plaintiff argues the legal standard used by the ALJ to determine whether Plaintiff suffered from a severe impairment was incorrect. According to Plaintiff, the ALJ failed to articulate and apply the standard set forth in *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985), and unless the correct standard is used, remand is required. *Id.* at 1106.

When a case is decided at step two, the ALJ determines whether an impairment is severe, irrespective of the claimant's age, education or work experience. 20 C.F.R. § 404.1520(c) (2008). Pursuant to the regulation, a severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." *Id.* The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because it would deny benefits to individuals who are disabled under the statute. *Stone v. Heckler,* 752 F.2d 1099, 1104–05 (5th Cir.1985). Accordingly, in this Circuit,

---

**6.** The Court interprets this as Fosamax.

**7.** The Court interprets this as Crestor.

**8.** The correct spelling is Glimeperide.

"[A]n impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."

*Stone*, 752 F.2d at 1101, quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984) (citations omitted). In *Stone*, the Fifth Circuit held that it would assume that the

"ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to the *Stone* opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration."

*Stone*, 752 F.2d at 1106.

█ The ALJ did not reference *Stone* or a similar opinion applying the Fifth Circuit's standard, and he did not state he was construing the regulation in accordance with *Stone*. However, this omission does not end the inquiry. "*Stone* does not require a wholesale remand of all severity cases. A case will not be remanded simply because the ALJ did not use 'magic words.' We remand only where there is no indication the ALJ applied the correct standard." *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir.1986).

The heading on page four of the ALJ's decision states as follows:

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a "severe" impairment or

combination of impairments (20 C.F.R. 404.1521).

(R. 17). This language does not set forth the Fifth Circuit standard. It simply tracks the definition of severe impairment in the Social Security regulations. However, the ALJ made another statement regarding the standard he used at step two to determine whether Plaintiff has a medically determinable impairment, or combination of impairments, that is "severe."

In the previous section of his opinion, the ALJ set forth the applicable law before making his findings of fact and conclusions of law. He stated:

"An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to do work (citations omitted)."

(R. 15).

Although this language includes the words "slight abnormality," it does not correctly state the standard. The standard set forth by the ALJ allows an impairment to be considered non-severe when it has *a minimal effect on the individual's ability to do work.* Under *Stone*, an impairment may be non-severe only where "it is a slight abnormality which has such *minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,* irrespective of age, education, or work experience." *Id.* at 1101.

While the difference between these two statements appears slight, it is clear the ALJ's construction of the regulation does not follow the *Stone* standard. Under

*Stone*, a non-severe impairment is not expected to interfere with the individual's ability to work. The ALJ's interpretation allowed a finding that Plaintiff's impairments were non-severe despite having an effect, albeit minimal, on her ability to do work. This difference, coupled with the ALJ's failure to cite *Stone* or otherwise indicate he was applying the Fifth Circuit's standard, leads the Court to conclude an incorrect standard of severity was applied at step two of the analysis.

Further support for this conclusion is found in the recent case of *Scroggins v. Astrue*, 598 F.Supp.2d 800 (N.D.Tex.2009). In *Scroggins*, the District Court analyzed language identical to that used by the ALJ in the instant case, and concluded an incorrect severity standard had been applied. *Id.* at 806. The case was remanded for further administrative proceedings to determine, using the correct standard, whether the claimant's impairments were severe.

In the present case, the ALJ did not cite *Stone*, reference, or explicitly state the *Stone* standard in his step-two decision. In the heading of the section devoted to analyzing Plaintiff's impairments, the ALJ used only the "significantly-limit" language of the severity regulation. (R. 18). The legal standard set forth in the previous section uses the words "slight abnormality," but it does not correctly state the *Stone* standard. Furthermore, in finding Plaintiff's diabetes was not a severe impairment, the ALJ stated there was "no evidence that her diabetes caused any *significant limitations* of function during the specific time period." (emphasis added) (R. 19).

Also troubling is the ALJ's reliance on Dr. Casner's assessment of the medical evidence. Dr. Casner stated there was "Insufficient Medical Evidence prior to DLI 12/31/03 *to determine the case*." (emphasis added) (R. 158). Dr. Casner did not indicate on the check-box portion of the form that Plaintiff had non-severe impairments. Rather, he checked the box on the form indicating a "Technical Denial." (R. 158). The ALJ stated he gave significant weight to Dr. Casner's report. (R. 18). However, the report does not make conclusive findings regarding the severity of Plaintiff's impairments.

█ Accordingly, the Court finds this case must be remanded for reconsideration of the facts in light of the proper standard, after considering any further evidence as may be offered by either the Plaintiff or the Commissioner. If the ALJ determines Plaintiff had severe impairment(s) during the relevant time period, then the ALJ should proceed through the sequential steps of the disability determination process. Because the Court finds the case must be remanded pursuant to *Stone*, the Court does not reach Plaintiff's third ground for relief addressing whether the ALJ erred in failing to obtain expert medical evidence to assist him in determining the onset of her impairments.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, REVERSED.

It is further ORDERED that this case be, and it is hereby, REMANDED for further administrative proceedings in accordance with this opinion.

## JUDGMENT

In accordance with the Memorandum Opinion and Order this day entered in the above-captioned and numbered cause,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the decision of the Commissioner be, and the same is hereby, REVERSED and REMANDED

pursuant to sentence four of Title 42 U.S.C. § 405(g) for further administrative proceedings.